# EXHIBIT 5

1   Jeffrey H. Reeves, CA SBN 156648
    GIBSON, DUNN & CRUTCHER LLP
2   4 Park Plaza, Suite 1400
3   Irvine, California 92614-8557
    jreeves@gibsondunn.com
4   (949) 451-3800 (Telephone)
    (949) 451-4220 (Facsimile)
5
6   and
7   S. Ashlie Beringer (admitted *pro hac vice*)
    Laura M. Sturges (admitted *pro hac vice*)
8   GIBSON, DUNN & CRUTCHER LLP
    1801 California Street, Suite 4200
9   Denver, Colorado 80220
    aberinger@gibsondunn.com
10  (303) 298-5718 (Telephone)
11  (303) 313-2868 (Facsimile)

12  Attorneys for Plaintiffs and Counterclaim Defendants

13              UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16  GRATEFUL DEAD PRODUCTIONS, a
    California corporation, CADESTANSA, LLC, a       CASE NO. C 06 7727 (JW) (PV)
17  limited liability company on behalf of CARLOS
    SANTANA, an individual, JIMMY PAGE, an          PLAINTIFFS' FIRST SET OF
18  individual, ROBERT PLANT, an individual,        INTERROGATORIES TO DEFENDANTS
19  JOHN PAUL JONES, an individual,
    RAYMOND MANZAREK, an individual,
20  ROBBY KRIEGER, an individual, JOHN
    DENSMORE, an individual, PEARL
21  COURSON, an individual, GEORGE
22  MORRISION, an individual, FANTALITY
    CORP., a Colorado corporation, SONY BMG
23  MUSIC ENTERTAINMENT, a Delaware
    general partnership, BMG MUSIC, a New York
24  partnership, and ARISTA RECORDS, a
    Delaware LLC,
25
26                  Plaintiffs,
27          v.
28  WILLIAM E. SAGAN, an individual, NORTON
    LLC, a limited liability company, and BILL

                        1

1   GRAHAM ARCHIVES LLC, d/b/a
    WOLFGANG'S VAULT, a limited liability
2   company,

3              Defendants.

4   NORTON LLC, a limited liability company,
    BILL GRAHAM ARCHIVES LLC, d/b/a
5   WOLFGANG'S VAULT, a limited liability
    company, and WILLIAM E. SAGAN, an
6   individual,

7              Counterclaim Plaintiffs,

8       v.

9   GRATEFUL DEAD PRODUCTIONS, a
    California corporation, CADESTANSA, LLC, a
10  limited liability company on behalf of CARLOS
    SANTANA, an individual, JIMMY PAGE, an
11  individual, ROBERT PLANT, an individual,
    JOHN PAUL JONES, an individual,
12  RAYMOND MANZAREK, an individual,
    ROBBY KRIEGER, an individual, JOHN
13  DENSMORE, an individual, PEARL
    COURSON, an individual, GEORGE
14  MORRISON, an individual, FANTALITY
    CORP., a Colorado corporation, SONY BMG
15  MUSIC ENTERTAINMENT, a Delaware
    general partnership, BMG MUSIC, a New York
16  partnership, ARISTA RECORDS, a Delaware
    LLC, ROBERT WEIR, an individual, WARNER
17  MUSIC GROUP CORP., a Delaware
    corporation, RHINO ENTERTAINMENT, its
18  subsidiary, and BRAVADO INTERNATIONAL
    GROUP, INC., a California corporation,
19

20             Counterclaim Defendants.

21

22          Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and in accordance with

23  the definitions and terms set forth in the Local Civil Rules 26 and 33 of the United States District

24  Court for the Northern District of California, as well as the Instructions and Definitions set forth

25  below, Plaintiffs and Counterclaim Defendants Grateful Dead Productions, Cadestansa LLC, a

26  limited liability company on behalf of Carlos Santana, Jimmy Page, Robert Plant, John Paul Jones,

27  Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson, George Morrison, Fantality

28

2

Corp., Sony BMG Music Entertainment, BMG Music, and Arista Records ("Plaintiffs"), by their undersigned attorneys, hereby propound the following Interrogatories to Defendants William E. Sagan, Norton LLC, and Bill Graham Archives, LLC d/b/a Wolfgang's Vault ("Defendants" or "You"), which must be answered and returned to the offices of Gibson, Dunn & Crutcher LLP, 1801 California Street, Suite 4200, Denver, Colorado, 80202 within 30 days from the date of service hereof.

## Instructions and Definitions

1.  Each Interrogatory must be separately answered fully, in writing, and under oath.

2.  Unless explicitly specified otherwise, each Interrogatory refers and relates to, and shall encompass, activities worldwide. Each Interrogatory shall be answered based on Your knowledge from all sources, including information in Your possession or in the possession of Your attorneys or any other person or entity purporting to act on Your behalf.

3.  In responding to these Interrogatories, You shall comply with Civil L.R. 33-1 and Civil L.R. 33-2.

4.  With respect to each Interrogatory, You shall identify the person who answered the Interrogatory and any person who provided information used in answering the Interrogatory.

5.  Under Fed. R. Civ. P. 26(e), these Interrogatories are continuing in nature so that if You subsequently discover or obtain possession, custody or control of any information covered by these Interrogatories, You must produce such information within the time period contemplated by Fed. R. Civ. P. 26(e).

6.  In the event that You object to any Interrogatory herein, or part thereof, You shall state with specificity all grounds for the objection. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed to be waived.

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

7.  In the event that You object to any Interrogatory herein or part thereof on the basis of attorney-client privilege, work product doctrine, and/or any other privilege or doctrine against disclosure, You must: (i) specify the privilege or other asserted basis for withholding the information requested; (ii) state the facts supporting the applicability of the privilege or doctrine; (iii) state the general nature (but not the specific content) of the information which You refuse to provide and which You contend is non-discoverable; and (iv) state the names, current addresses, and employment affiliations of all persons who are or were privy to the information which You refuse to provide and which You contend is non-discoverable.

8.  Do not leave any part of an Interrogatory unanswered merely because You object to another part of the Interrogatory.

9.  The singular shall include the plural and vice versa, and the conjunctive shall include the disjunctive and vice versa, in order to give these Interrogatories their broadest scope.

10. "The Complaint" shall mean the First Amended Complaint filed in this action on or about February 5, 2007 in the United States District Court for the Northern District of California.

11. "The Answer" shall mean the Defendants' Answer to First Amended Complaint and Counterclaims filed in this action on or about February 20, 2007 in the United States District Court for the District of California.

12. "Plaintiff" or "Plaintiffs" shall mean any, some or all of the Plaintiffs and Counterclaim Defendants Grateful Dead Productions, Cadestansa LLC, a limited liability company on behalf of Carlos Santana, Jimmy Page, Robert Plant, John Paul Jones, Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson, George Morrison, Fantality Corp., Sony BMG Music Entertainment, BMG Music, and Arista Records and/or any of their parents, subsidiaries, affiliates, or predecessors, and any of their officers, directors, employees, attorneys, agents, independent contractors or other persons acting or engaged to act on their behalf.

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

13. "Sony BMG Artists" shall mean any musical performing artist or group whose performances are fixed on Sound Recordings that have been or are available for Digital Audio Transmission on the Website and/or that are in the possession, custody or control of any of the Defendants, and who are identified on Exhibit A hereto.  The Sony BMG Artists have been identified based on the current information available, and Plaintiffs reserve the right to revise, supplement or amend this list based on additional information obtain during discovery or otherwise.

14. "You," "Defendant" or "Defendants" shall mean any, some or all of the Defendants and Counterclaim Plaintiffs William E. Sagan, Norton LLC, and Bill Graham Archives LLC, d/b/a Wolfgang's Vault and/or any of their parents, subsidiaries, affiliates, or predecessors, and any of their officers, directors, employees, attorneys, agents, independent contractors or other persons acting or engaged to act on their behalf.

15. "Graham" shall mean Bill Graham or any company, venture or enterprise in which Graham was a partner, owner, officer or director, including without limitation Bill Graham Presents, Winterland Productions and any of their officers, directors, employees, attorneys, agents, independent contractors or other persons acting or engaged to act on their behalf.

16. "Plaintiffs' Intellectual Property" shall include (i) any and all federal and state common law copyrights and/or other rights in the Sound Recordings and/or Audio Recordings; (ii) the name, voice, signature, photograph, or likeness of any of the Musical Artists; and/or (iii) any of the registered federal trademarks identified in Exhibit B, attached.

17. "Musical Artists" shall include any, some or all of the Sony BMG Artists, the Grateful Dead, Jerry Garcia, Robert Weir, Mickey Hart, Phil Lesh, Bill Kreutzmann, Carlos Santana, Santana, Led Zeppelin, Jimmy Page, Robert Plant, John Paul Jones, John Bonham, The Doors, Jim Morrison, Raymond Manzarek, Robby Krieger, John Densmore, Big Brother & the Holding Company, and Janis Joplin.

5

Gibson, Dunn &
Crutcher LLP

18. "Graphic Artists" shall include any, some or all of the graphic artist(s) responsible, in whole or in part, for designing, authoring or creating the graphic and/or visual artwork contained in the Poster Art, Apparel, or Swag, including by way of example only, and without limitation, Stan Mouse, Alton Kelley, Rick Griffin, Ken Friedman and Randy Tuten.

19. "Photographers" shall include any, some or all of the photographer(s) responsible for taking, or creating the Photographs, including by way of example only, and without limitation, Grant Jacobs, Ken Friedman, Herb Green and Jim Marshall.

20. "Seller" shall include any person or entity, other than Graham, which purported to sell or transfer any Acquired Materials or rights in any Acquired Materials to Defendants in connection with the Vault or the Website, including without limitation Artrock Assets, Peace Rock, Legends Concert Posters, Psychedelic Solution, Classic Posters, Tom Moffatt Productions, King Biscuit Flower Hour, Silver Eagle Cross Country, Gene Anthony, Jim Marshall, Joseph Sia, Michael Zagaris and/or Baron Wolman or any entity or individual related to these companies and individuals.

21. "Website" shall refer to http://www.wolfgangsvault.com, the website owned and operated by Defendants.

22. "Acquired Materials" shall include any, some or all of the physical assets, documents and/or materials purchased or acquired by, or transferred or assigned to, any of the Defendants, in connection with the acquisition by one or more of them of certain materials from SFX and/or Clear Channel Entertainment on or about July 29, 2002, or from Artrock Assets, Peace Rock, Legends Concert Posters, Psychedelic Solution, Classic Posters, Tom Moffatt Productions, King Biscuit Flower Hour, Silver Eagle Cross Country, Gene Anthony, Jim Marshall, Joseph Sia, Michael Zagaris and/or Baron Wolman or any other Seller.

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

23. "Vault" shall include any and all storage facilities, warehouses or other physical facilities that contain some or all of the Acquired Materials, including without limitation the facility located at 149 Bluxome Street, San Francisco, California, 94107.

24. "Sound Recordings" shall mean each and every work in the Vault and/or in Defendants' possession, custody or control that results from the fixation of a series of musical, spoken or other sounds, regardless of the nature of the material objects, such as disks, tapes or other phonorecords, in which they are embodied, and which feature the musical, spoken or other sounds of any of the Musical Artists.

25. "Audiovisual Recordings" shall mean any work that consists of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers or electronic equipment, together with the accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied, and which feature the musical, spoken or other sounds and/or the visual images of any of the Musical Artists.

26. "Poster Art " shall refer to any, some or all of the original posters, handbills, serigraphs, proofs, postcards, programs, tickets and printed materials that are or were contained in the Acquired Materials and/or the Vault and/or are or were offered for sale on the Website.

27. "Photographs" shall refer to any, some or all of the original photographs, photographic prints, proof sheets, fine art prints, Bill Graham Archive prints, promo prints and proofs that are or were contained in the Acquired Materials and/or the Vault and/or are or were offered for sale on the Website.

28. "Apparel" shall refer to any, some or all of the original t-shirts, ties and other apparel that are or were contained in the Acquired Materials and/or the Vault and/or are or were offered for sale on the Website.

PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

29. "Swag" shall refer to any, some or all of the original physical materials contained among the Acquired Materials and/or the Vault not otherwise included in the defined terms above, including without limitation mugs, key chains, backstage passes, laminates, water bottles, pelons, stickers, pins, books and similar items.

30. "Reproductions" shall refer to any, some or all of the newly-created articles that were manufactured or created by, with the permission of, under the direction of or under license from, any of the Defendants, which contain, depict, copy or reproduce, in whole or in part, any of the Plaintiffs' Intellectual Property, the Poster Art, the Photographs, the Apparel, the Swag and/or any portion thereof, by any process or means, including without limitation, the "new poster reprints," the "reissued poster classics," "serigraphs," "fine art prints," "concert photos," "fine art giclee prints," "retro apparel," "infant onesies," wrapping paper, afghans, wall calendars and other reproduced merchandise offered for sale on the Website.

31. "Digital Audio Transmission" shall mean a transmission in whole or in part in a digital or other non-analog format.

32. "Author" shall have the meaning ascribed to that term under the United States Copyright Act, 17 U.S.C. § 101 *et seq.*

### Interrogatories

1.   Identify and describe in detail all facts and circumstances concerning the creation of the Poster Art, Apparel, Photographs and Swag, including without limitation the purpose(s) for which these materials were created, any contracts, licenses, permissions or releases obtained by Graham or any Seller in connection with these materials, and any rights acquired or owned by Graham or any Seller in connection with these materials.

2.   Identify and describe in detail all contracts, agreements, releases, licenses or permissions (whether oral or written) to which Graham is a party and which concern any of the Plaintiffs and/or

PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

Gibson, Dunn & Crutcher LLP

Musical Artists, including without limitation all contracts, agreements, releases, licenses or permissions (whether oral or written) between Graham and any of the Plaintiffs and/or Musical Artists or their representatives.

3.  Identify each and every individual and entity involved in the sale to or purchase by the Defendants of the Acquired Materials, including the role played by each such individual and entity in each such transaction.

4.  Identify all Acquired Material that features any of the Plaintiffs' Intellectual Property, and for each, describe in detail: (i) the date the item was created; (ii) the person(s) who created the item; (iii) the purpose for which the item was originally created; (iv) the source from which Defendants' acquired the item; and (v) the original and current inventory levels of such item.

5.  Identify and describe in detail each and every instance in which Defendants have used the name, voice, signature, photograph, videotape or likeness, in any manner, of any of the Musical Artists, on or in products, merchandise or goods, or in connection with advertising or selling, or soliciting purchases of products, merchandise, goods or services, including without limitation, on the Website, Poster Art, Apparel, Swag, Photographs, Sound Recordings, Audiovisual Recordings or Reproductions.

6.  Identify all Reproductions made by or at the request of Defendants, and for each, describe in detail: (i) any Acquired Material that was copied or reproduced in whole or in part on such Reproduction; (ii) Plaintiffs' Intellectual Property depicted or contained in such Reproduction; and (iii) all facts and contentions that support Defendants' alleged right to reproduce, sell and exploit such Reproduction.

7.  Identify and describe in detail any license, assignment, agreement, consent or permission from the Plaintiffs and/or Musical Artists or their representatives in connection with each of the uses identified in response to Interrogatories Nos. 4 & 5.

9

PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

8.  For each item that has at any time been offered for sale on the Website and that features any of the Plaintiffs' Intellectual Property, identify and describe in detail: (i) the date the item was first offered for sale; (ii) a description of the Plaintiffs' Intellectual Property featured in the item; (iii) the total units sold of the item; (iv) the retail price charged for the item; (v) the total expenses incurred in connection with the manufacture, sale and promotion of the item; and (vi) the total revenues from the manufacture, sale and promotion of the item.

9.  Identify and describe in detail each and every transformative element and/or creative contribution allegedly made by Defendants to any of Plaintiffs' Intellectual Property on or in the products, merchandise or goods offered for sale on the Website.

10. Identify each and every Sound Recording and/or Audiovisual Recording in the Vault, and for each such Sound Recording, describe in detail: (i) the date of the Recording; (ii) the source from which the Recording was acquired by Defendants; (iii) the performers on the Recording; (iv) the person(s) who captured or fixed the Recording; (v) the manner in which the Recording was made; (vi) the purpose for which the Recording was made; and (vii) the original format of the Recording.

11. Identify each and every Author of each and every Sound Recording and/or Audiovisual Recording contained in the Vault, and describe in detail the specific independent copyrightable contribution(s) made by such Author to each such Recording, as well as the date of any such contribution(s).

12. Identify and describe in detail each and every instance in which any copyright or other ownership rights in any of the Sound Recordings and/or Audiovisual Recordings was transferred, assigned, licensed or conveyed.

13. Identify and describe in detail each and every instance in which Defendants have caused any of the Sound Recordings and/or Audiovisual Recordings to be performed publicly by means of a

10

Digital Audio Transmission or otherwise, as well as all facts and contentions that support

Defendants' right to cause such Recordings to be publicly performed.

14. Identify and describe in detail each and every instance in which Defendants caused any of the Sound Recordings and/or Audiovisual Recordings to be duplicated in the form of copies that directly or indirectly recaptured the actual sounds and/or images fixed in the Recordings, and for each such instance, describe in detail: (i) the identity of the Recording which was duplicated; (ii) the date(s) on which such Recording was duplicated, directly or indirectly; (iii) the particular medium of the original Recording; and (iv) the medium of the object onto which the Recording was duplicated, directly or indirectly.

15. Identify and describe in detail any license, permission or consent given by the Musical Artists and/or their representatives in connection with each public performance and act of duplication identified in response to Interrogatories Nos. 12 & 13.

16. Identify and describe in detail any and all communications, negotiations, agreements or licenses between Defendants and any third party concerning the right to sell, transmit, publicly perform, copy or exploit any of the Acquired Materials.

17. Identify the specific basis on which Defendants contend that they are entitled to pay the statutory royalties to Sound Exchange, BMI, ASCAP, and SESAC in connection with the Digital Audio Transmission of the Sound Recordings and/or Audiovisual Recordings on Vault Radio and Concert Vault.

18. Identify Defendants' gross monthly revenue from the sale and/or exploitation of the Acquired Materials on the Website, and provide a breakdown of Defendants' gross monthly revenues by product category.

19. Identify and describe in detail all facts, documents and contentions supporting the assertion that Defendants "purchased . . . all related intellectual property and copyrights," including without

11

limitation identifying and describing precisely the rights allegedly acquired with specificity, as quoted in Defendants' Press Release entitled *Minnesota Entrepreneur Acquires the Bill Graham Archive, the Legendary Music Promoter's Definitive Collection of Concert Music and Memorabilia*, July 29, 2002.

20. Identify and describe in detail all facts, documents and contentions supporting the assertion by Defendants' counsel that "Wolfgang's Vault has the right to use the posters, photographs and music. The rights were acquired in a series of transactions that can't be challenged," as quoted in *They're Not in Concert: Wolfgang's Vault Site Opens a Pandora's Box of Copyright Issues Over Rock Performances*, SAN FRANCISCO CHRONICLE, Dec. 26, 2006.

21. Identify and describe in detail all facts, documents and contentions supporting Defendants' assertion that "[t]he recordings were made legally; Mr. Sagan has a filing cabinet filled with documentation to prove it," as reported in *Pipe Dream: Music Stash Recalls When Rock was Young*, THE WALL STREET JOURNAL ONLINE, Dec. 13, 2005.

22. Identify and describe in detail all facts, documents and contentions supporting Bill Sagan's assertion that "[w]e have the ability to take these recordings and broadcast them.  We own the master recording, and in order to broadcast them, you don't have to negotiate with anyone, you just pay the rate," as quoted in *Unknown Rock Archive Opened!*, MOJO MAGAZINE, Oct. 1, 2006.

23. Identify and describe in detail all facts, documents and contentions that support Defendants' assertion at paragraphs 38-40 of their Counterclaims that Graham "sold thousands upon thousands of items of memorabilia from his legendary shows . . . [and] sold more than 250,000 posters of the very same kind now sold by [Bill Graham Archives] . . . and licensed audio and video footage of the legendary concerts he promoted."

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS

24. Identify and describe in detail all communications between Warner Music Group, including any of its agents, representatives, or employees, and Defendants, including without limitation the communications and correspondence referenced in paragraphs 53-61 of Defendants' Counterclaims.

25. Identify and describe in detail any and all communications between Sony BMG, including any of its agents, representatives, or employees, and Defendants, including without limitation the communications referenced in paragraphs 67-71 and 77-80 of Defendants' Counterclaims.

26. Identify and describe in detail all facts, documents and contentions supporting Defendants' assertion at paragraph 65 of their Counterclaims that "subsidiaries of Sony BMG had previously entered into licensing arrangements with King Biscuit . . . that would effectively preclude Plaintiffs from asserting claims related to many Sony BMG artists."

27. Identify all past and present employees of the Defendants, including their dates of employment, title and current contact information.

DATED:  March 21, 2007

GIBSON, DUNN & CRUTCHER LLP

By _____

S. Ashlie Beringer
Laura Sturges
1801 California Street, Suite 4200
Denver, CO  80202
Telephone:  303-298-5718

and

Jeffrey H. Reeves
4 Park Plaza, Suite 1400
Irvine, CA 92614-8557
Tel: 714-451-3800

*Attorneys for Plaintiffs and Counterclaim Defendants*

13

Gibson, Dunn &
Crutcher LLP

## Exhibit A

A Flock Of Seagulls

Accept

Aerosmith

Alabama

Altered Images

Autograph

Aztec Two-Step

Razzy Bailey

Bobby Bare

Big Brother & The Holding Co.

Michael Bloomfield

Blue Oyster Cult

Boomtown Rats

David Bowie

Bruce Hornsby & The Range

The Byrds

The Chambers Brothers

The Charlie Daniels Band

Cheap Trick

Clarence Clemons and the Red Bank
Rockers

The Clash

Jimmy Cliff

Billy Cobham

Bruce Cockburn

David Allen Coe

Commander Cody

Earl Thomas Conley

Copperhead

Lacy J. Dalton

Dan Hicks & The Acoustic Warriors

Miles Davis (Quintet)

Rick Derringer

Bob Dylan (& the Rolling Thunder Revue)

Edgar Winter's White Trash

Dave Edmunds

Electric Flag

Elvin Bishop Group

Elvis Costello & The Attractions

Exile

The Fabulous Thunderbirds

The Flamin' Groovies

Fleetwood Mac

Janie Fricke

The Funky Kings

Rory Gallagher

Art Garfunkel

Robert Gordon

Hall & Oates

Herbie Hancock

Heart

Hot Tuna

Irakere

It's A Beautiful Day

Jefferson Airplane

Jefferson Starship

John Cafferty and the Beaver Brown
Band

Journey

Lighthouse

The Loading Zone

Loggins & Messina

Merle Haggard & The Strangers

Molly Hatchet

Eddie Money

Mountain

New Riders of the Purple Sage

Laura Nyro

Ozzy Osbourne

Pierce Arrow

ThePsychedelic Furs

TheRascals

Santana

Boz Scaggs

Sly & The Family Stone

The Sons of Champlin

Bruce Springsteen

Taj Mahal

Stevie Ray Vaughan

**Exhibit B**

| Trademark | Attachment No. (If Design) |
|---|---|
| The Doors | |
| Dead Head | |
| GD | |
| Grateful Dead | |
| The Dead | |
| Design plus words (Bear/Grateful Dead) | Attached as B1 |
| Design (Bear) | Attached as B2 |
| Design (Bear) | Attached as B3 |
| Design (Bear) | Attached as B4 |
| Design (Bear) | Attached as B5 |
| Design (Bears) | Attached as B7 |
| Design (Skeleton) | Attached as B8 |
| Design plus words (Skull/Roses/Grateful Dead) | Attached as B10 |
| Design (Lightning Bolt) | Attached as B12 |
| Design (Skeleton/Roses) | Attached as B13 |
| Design (Skull/roses) | Attached as B14 |
| Design (Skull/roses) | Attached as B15 |
| Design (Skull/Lightning bolt) | Attached as B16 |
| Janis Joplin | |
| Janis | |
| Led Zeppelin | |
| Santana | |



B1



B2



B3



B4



B5



B6

 B7

 B8

 B9



B10



B11



B12



B13



B14



B15



B16



B17



B18



B19