1   Jeffrey H. Reeves (SBN 156648)
2   Joshua A. Jessen (SBN 222831)
    GIBSON, DUNN & CRUTCHER LLP
3   3161 Michelson Drive
    Irvine, California 92612-4412
4   jreeves@gibsondunn.com
    (949) 451-3800 (Telephone)
5   (949) 451-4220 (Facsimile)

6   and

7   S. Ashlie Beringer (admitted *pro hac vice*)
8   Laura M. Sturges (admitted *pro hac vice*)
    GIBSON, DUNN & CRUTCHER LLP
9   1801 California Street, Suite 4200
    Denver, Colorado 80202
10  aberinger@gibsondunn.com
    (303) 298-5718 (Telephone)
11  (303) 313-2868 (Facsimile)

12
    Attorneys for Plaintiffs and Counter-Defendants
13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                   SAN JOSE DIVISION

17  GRATEFUL DEAD PRODUCTIONS, a
18  California corporation, CADESTANSA, LLC, a        CASE NO. 06-07727 (JW) (PVT)
    limited liability company on behalf of CARLOS
19  SANTANA, an individual, JIMMY PAGE, an           **PLAINTIFFS' SECOND NOTICE OF**
    individual, ROBERT PLANT, an individual,         **MOTION AND MOTION TO COMPEL**
20  JOHN PAUL JONES, an individual,                  **(1) PRODUCTION OF DOCUMENTS AND**
    RAYMOND MANZAREK, an individual,                 **THINGS, AND (2) SUBSTANTIVE,**
21  ROBBY KRIEGER, an individual, JOHN               **VERIFIED RESPONSES TO PLAINTIFFS'**
    DENSMORE, an individual, PEARL                   **FIRST SET OF INTERROGATORIES;**
22  COURSON, an individual, GEORGE                   **MEMORANDUM OF POINTS AND**
    MORRISION, an individual, FANTALITY              **AUTHORITIES IN SUPPORT THEREOF**
23  CORP., a Colorado corporation, SONY BMG
    MUSIC ENTERTAINMENT, a Delaware
24  general partnership, BMG MUSIC, a New York
    partnership, and ARISTA RECORDS, a               Date:    September 18, 2007
25  Delaware LLC,                                    Time:    10:00 a.m.
                                                     Ctrm:    Honorable Patricia V. Trumbull
26
                           Plaintiffs,
27
                    v.
28

Gibson, Dunn &
Crutcher LLP

---

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

WILLIAM E. SAGAN, an individual, NORTON
LLC, a limited liability company, and BILL
GRAHAM ARCHIVES LLC, d/b/a
WOLFGANG'S VAULT, a limited liability
company,

                    Defendants.

NORTON LLC, a limited liability company,
BILL GRAHAM ARCHIVES LLC, d/b/a
WOLFGANG'S VAULT, a limited liability
company, and WILLIAM E. SAGAN, an
individual,

         Counterclaimants,

   v.

GRATEFUL DEAD PRODUCTIONS, a
California corporation, CADESTANSA LLC, a
limited liability company on behalf of CARLOS
SANTANA, an individual, JIMMY PAGE, an
individual, ROBERT PLANT, an individual,
JOHN PAUL JONES, an individual,
RAYMOND MANZAREK, an individual,
ROBBY KRIEGER, an individual, JOHN
DENSMORE, an individual, PEARL
COURSON, an individual, GEORGE
MORRISON, an individual, FANTALITY
CORP., a Colorado corporation, SONY BMG
MUSIC ENTERTAINMENT, a Delaware
general partnership, BMG MUSIC, a New York
partnership, and ARISTA RECORDS, a
Delaware LLC, ROBERT WEIR, an individual,
WARNER MUSIC GROUP CORP., a Delaware
corporation, RHINO ENTERTAINMENT, its
subsidiary, and BRAVADO INTERNATIONAL
GROUP, INC., a California corporation,

         Counterclaim Defendants.

Gibson, Dunn &
Crutcher LLP

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Tuesday, September 18, 2007, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Patricia V. Trumbull, in Courtroom 5, located at 280 South 1st Street, San Jose, California 95113, Plaintiffs and Counter-Defendants Grateful Dead Productions; Cadestansa LLC, a limited liability company on behalf of Carlos Santana; Jimmy Page; Robert Plant; John Paul Jones; Raymond Manzarek; Robby Krieger; John Densmore; Pearl Courson; George Morrison; Fantality Corp.; Sony BMG Music Entertainment; BMG Music; and Arista Records (collectively "Plaintiffs") will, and hereby do, move the Court, pursuant to Federal Rule of Civil Procedure 37(a)(2)(B) and Local Rule 37, for an order compelling Defendants William E. Sagan, Norton LLC, and Bill Graham Archives LLC d/b/a Wolfgang's Vault (collectively "Defendants") (1) to produce no later than September 28, 2007 *all* outstanding, non-privileged documents responsive to the 87 requests for production of Plaintiffs to which Defendants previously agreed (including on the record before this Court) to produce responsive documents, and (2) to provide complete, substantive, verified responses to Plaintiffs' First Set of Interrogatories, as Defendants agreed to do in the parties' Joint Proposal Pursuant to the Court's Interim Order re Plaintiffs' Motion to Compel, filed July 19, 2007.

The basis for this Motion is that Defendants have not produced the vast majority of documents they had agreed to produce, have refused to commit to a firm deadline for completing their production, and have not provided the verified interrogatory responses they had agreed to provide.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of S. Ashlie Beringer, the records and files in this action, and any other matters of which this Court may take judicial notice.

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-1, undersigned counsel certifies that the parties have conferred for the purpose of attempting to resolve all disputed issues. Counsel met and conferred telephonically on July 23, 2007 and August 28, 2007, and also exchanged extensive correspondence on the disputed issues.

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................... 2

A.   The Nature of The Lawsuit .......................................................... 2

B.   Defendants' Empty Promises To Plaintiffs And To This Court That
     They Would Comply With Their Discovery Obligations, And
     Defendants' Stonewalling Tactics ................................................ 3

     1.   Defendants' Stonewalling Tactics Regarding Document
          Production ......................................................................... 4

     2.   Defendants' Refusal To Provide Complete, Substantive
          Interrogatory Responses .................................................... 6

III. ARGUMENT ....................................................................................... 8

A.   The Court Should Compel Defendants To Produce Immediately All
     Non-Privileged Documents In Their Possession, Custody Or Control ..... 8

B.   Defendants Have Failed To Provide Complete Or Meaningful
     Responses To The Interrogatories They Agreed To Answer, Again
     Because No Court Order Exists Compelling Them To Do So.
     Accordingly, This Court Should Compel Defendants To Provide
     Substantive, Verified Responses To Plaintiffs' Interrogatories, As Set
     Forth In The Joint Proposal ......................................................... 11

     1.   The Identity And Format of Each Video Recording Featuring
          The Musical Artists ........................................................... 12

     2.   The Source From Which Defendants Acquired Each Original
          Item ................................................................................ 12

     3.   The Identity of The Individuals Who Created Each Sound and
          Video Recording ............................................................... 13

     4.   The Identity of Each Alleged Author of the Recordings and The
          Basis for Authorship ......................................................... 13

     5.   The Circumstances or Purposes For Which Specific Items Were
          Created ............................................................................ 14

     6.   A Basic Description of Any Original Contracts Made In
          Connection With the Creation of Each Item at Issue ............... 14

     7.   The Identity of Reproductions and Source of Reproduction .......... 15

     8.   Whether Each Sound Recording Has Been Duplicated Or
          Publicly Performed ........................................................... 16

i

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

# TABLE OF CONTENTS
## [Continued]

Page

9.   A Basic Description of Communications, Negotiations and Agreements Between Defendants and Any Third Party Concerning The Potential Exploitation of the Acquired Materials..................................................................................... 16

10.  Dates of Employment and Job Descriptions of Defendants' Employees................................................................................. 16

11.  Verification Pursuant to Fed. R. Civ. P. 33(b).............................. 17

IV.   CONCLUSION................................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000)..................................................................................... 13

*General Cigar Co., Inc. v. Cohiba Caribbean's Finest, Inc.*,
   2007 WL 983855 (D. Nev. Mar. 30, 2007).............................................................. 12-13

## RULES

Fed. R. Civ. P. 33(b) ...................................................................................... 7, 11, 17

Fed. R. Civ. P. 37(a)(2)(B)................................................................................. 8, 11

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs bring this motion to compel because Defendants continue to disobey their most basic discovery obligations.  With depositions now beginning in earnest, Defendants have failed to produce volumes of documents critical to this case and steadfastly refuse to commit to any deadline for doing so.  There is no dispute that Defendants are required to produce these missing documents, which go to the heart of this case.  Indeed, this Court issued a tentative ruling two months ago in response to Plaintiffs' first motion to compel, ordering Defendants to produce well over one dozen categories of documents.  In response, Defendants promised this Court, on the record in open court, that they would produce the documents.  Defendants agreed to produce the remainder of the outstanding documents over four months ago, when they served their written responses to Plaintiffs' document requests.  Nevertheless, at this late date, it appears that at least half of Defendants' production, if not more, remains missing.

Remarkably, despite this glaring insufficiency, Defendants remain cavalier about complying with their discovery obligations.  Defendants have failed even to discuss numerous basic categories of outstanding materials with their counsel—much less gather and produce them; Defendants' counsel remains unaware of the existence of numerous responsive documents; and, when questioned about the missing documents, Defendants' counsel has remarked that no court deadline exists which Defendants must meet.  Defendants are disregarding their discovery obligations and have frustrated Plaintiffs' ability to prosecute this case.  Judicial intervention, therefore, is necessary to prevent Defendants from continuing their hide-the-ball tactics and to compel production of the missing documents.

Defendants also have failed to provide meaningful, substantive (or in some cases, any) responses to many of Plaintiffs' interrogatories, despite agreeing in a joint proposal filed with this Court on July 19, 2007 to provide "complete substantive responses" to them.  As with Defendants' documents, Plaintiffs previously had to move to compel responses to these interrogatories, and, in response, Defendants promised this Court that they would provide responses to them.  Yet again, apparently emboldened by the lack of any official Court order compelling them to act, Defendants

Gibson, Dunn & Crutcher LLP

1

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2) SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

1  have failed to provide responses to numerous interrogatories seeking basic facts critical to Plaintiffs'

2  prosecution of this action.

3  Defendants' tactics have significantly prejudiced Plaintiffs.  Just last week, Plaintiffs were

4  forced to take off-calendar four depositions of Defendants' key witnesses because Plaintiffs still had

5  not received the bulk of the key documents missing from Defendants' production (or any assurance

6  that these materials would be produced before the depositions were set to begin next week).

7  Moreover, the deadline for opening expert reports in this case is December 10, 2007, and Defendants'

8  failure to produce their key documents is jeopardizing Defendants' ability to meet this impending

9  date.  Defendants' conduct makes clear that Defendants will not comply with their most basic

10 discovery obligations absent a Court order compelling them to do so.  To avoid yet further prejudicial

11 delay to Plaintiffs, Plaintiffs seek an order requiring Defendants to produce all outstanding

12 documents and to provide complete and verified responses to Plaintiffs' Interrogatories by no later

13 than September 28, 2007.

## II.      FACTUAL BACKGROUND

### A.      The Nature of The Lawsuit

16 As this Court knows, Plaintiffs are some of the most legendary recording and performing

17 artists of all time (collectively, the "Musical Artists") or own rights pertaining to such artists' work.

18 Defendants own and operate a website at www.wolfgangsvault.com through which they exploit,

19 without Plaintiffs' consent, sound recordings featuring the performances of the Musical Artists, as

20 well as vintage and reproduced merchandise featuring these artists' names, likenesses and

21 trademarks.  As a result of this unlawful conduct, Plaintiffs assert claims against Defendants for

22 copyright infringement, trademark infringement and infringement of publicity rights, among others.

23 Defendants have asserted numerous, and contradictory, defenses to Plaintiffs' claims,

24 including that:  (1) Defendants' predecessors-in-interest contributed creatively to the recordings at

25 issue and thus were co-owners of the recordings; (2) Defendants' predecessors-in-interest created the

26 recordings legally; (3) Defendants themselves have made alleged creative contributions to these

27 recordings, thereby vesting Defendants with ownership rights in them; (4) Defendants have paid

28 royalties to an entity known as Sound Exchange for the rights to exploit the recordings; and

Gibson, Dunn &
Crutcher LLP

2

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

(5) Defendants' predecessors-in-interest entered into agreements with Plaintiffs authorizing the reproduction and exploitation of the merchandise at issue.  (*See*, *e.g.*, Joint Case Management Statement ("JCMS"), Docket No. 41, filed April 2, 2007, and Declaration of S. Ashlie Beringer ("Beringer Decl.") Ex. I).

In light of the many issues raised by the pleadings, the parties have agreed that discovery is needed on "ownership/scope of intellectual property rights, infringement/violation of those rights, defenses, and damages."  (JCMS at 7).  Nevertheless, as explained more fully below, Defendants have failed to produce numerous documents and interrogatory responses relevant to these issues.

**B.      Defendants' Empty Promises To Plaintiffs And To This Court That They Would Comply With Their Discovery Obligations, And Defendants' Stonewalling Tactics**

Regrettably, this is the second time that Plaintiffs have been forced to seek judicial relief from this Court as a result of Defendants' refusal to:  (i) produce documents critical to this case and responsive to Plaintiffs' document requests, and (ii) provide complete, substantive and verified responses to Plaintiffs' interrogatories.

Plaintiffs served their first sets of document requests and interrogatories on March 21, 2007, and Defendants served their written responses on April 23, 2007.  (Beringer Decl. Exs. A, B, K & L).  Defendants objected to sixty percent of Plaintiffs' requests for production (54 of the 89 requests).  (*Id.* Ex. B).  Defendants also served blanket, boilerplate objections to all 27 of Plaintiffs' interrogatories based primarily on form, contending that the interrogatories allegedly contained subparts.  (*Id.* Ex. L).

After extensive meet-and-confer efforts by Plaintiffs, Defendants ultimately withdrew many of their unfounded objections to Plaintiffs' requests for production, and, on May 14, 2007, Defendants agreed to produce documents responsive to 37 of the 54 document requests to which they had initially objected.  (*Id.* Ex. C).  Thus, as of May 14, 2007, Defendants had agreed to produce all non-privileged documents responsive to 72 of Plaintiffs' 89 requests.  (*Id.*).

Defendants, however, still refused to produce any documents responsive to 17 critical document requests or to provide complete, substantive responses to Plaintiffs' interrogatories.  Accordingly, Plaintiffs were forced to file a Motion to Compel with this Court on May 22, 2007,

1   seeking an order compelling the production of documents and the furnishing of interrogatory

2   responses.  (Docket No. 54).

3          **1.**        **Defendants' Stonewalling Tactics Regarding Document Production**

4         On July 10, this Court heard oral argument with respect to the 17 disputed requests for

5   production.  During the hearing, this Court tentatively granted Plaintiffs' motion to compel with

6   respect to 15 of the 17 disputed requests.  (Beringer Decl. Ex. M, Transcript of Proceedings held on

7   July 10, 2007 ("Transcript") at 25, Docket No. 85).  However, before entering a formal order, this

8   Court instructed Plaintiffs' and Defendants' counsel to meet outside the courtroom and to try to reach

9   agreement on the requests.  (*Id.* at 25-26).  Faced with this Court's tentative ruling granting Plaintiffs'

10  motion to compel virtually in its entirety, Defendants' counsel agreed that Defendants would produce

11  documents responsive to 15 of the disputed requests (a few of which Plaintiffs agreed to narrow).

12  After reaching this agreement, Defendants' counsel returned to the courtroom and put Defendants'

13  promise to produce the disputed documents on the record, thereby avoiding entry of a formal order

14  compelling Defendants to act.  (*Id.* at 26-28).

15        Meanwhile, as of early July, Defendants had produced only 3,561 pages of documents and

16  had failed to produce the vast majority of documents they had agreed to produce months earlier in

17  response to the 72 document requests that were *not* the subject of Plaintiffs' first Motion to Compel.

18  Following a letter sent by Plaintiffs' counsel on July 8 (Beringer Decl. ¶ 7 Ex. D), the parties met and

19  conferred regarding Defendants' document production on July 23, 2007.  (Beringer Decl. ¶ 8).

20  During that meet-and-confer conference, Defendants assured Plaintiffs that Defendants would

21  produce all documents they had agreed to provide, including documents responsive to the 15 requests

22  that were the subject of Defendants' promise to the Court on July 10.  (*Id*.).  During this meet and

23  confer, however, Defendants refused to state *when* they would produce all responsive documents,

24  even though depositions were scheduled to begin in less than one month.  (*Id.*).  The most

25  Defendants' counsel would state was that Defendants were working to complete their production "as

26  soon as possible."  (*Id.*)

27        During the week of August 20-24, having produced only a handful of documents since June 7

28  (the date Defendants had made their initial 3,561-page document production), Defendants finally

Gibson, Dunn &
Crutcher LLP

4

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

produced a second set of documents.  (*Id.* ¶ 9).  But contrary to Defendants' previous assurances that their production was to be completed "soon," Defendants produced documents that were responsive to only a handful of Plaintiffs' document requests.[1]  Defendants' production was missing the vast majority of documents they had agreed to produce and that are critical to this case.  For example, and as detailed below and in a meet-and-confer letter sent to Defendants' counsel on August 27, 2007 (*id*. Ex. E), Defendants' production included only a smattering of emails on any subject relevant to this case and failed to include many (if any) documents concerning, among other things, negotiations or communications with third parties concerning rights in the disputed materials; the agreements between the Musical Artists and Defendants' predecessors-in-interest (upon which Defendants rely); the royalty payments made by Defendants to Sound Exchange, which allegedly insulate certain of Defendants' acts; and many other categories of relevant documents.

The parties again met and conferred on August 28, 2007 regarding the deficiencies in Defendants' document production.  (*Id.* ¶ 12).  During that conference, Defendants' counsel once again refused to agree to a deadline to complete Defendants' production, despite the fact that Defendants had promised months ago to produce the needed documents and that Plaintiffs were scheduled to take several depositions of key defense witnesses starting in mid-September.  (*Id.*)  In fact, Defendants' counsel argued that there was simply no deadline requiring them to produce their documents by a date certain, and would state only that they would continue to "do the best they could" to produce the documents.  (*Id*).  Defendants' counsel also refused to explain what steps Defendants had taken to collect responsive e-mails and other electronically-stored information (which was severely lacking from Defendants' production) and refused to confirm whether Defendants intended to produce several types of specific documents responsive to Defendants requests, regardless of when.  (*Id.*).

---

[1]   The bulk of Defendants' supplemental production consisted of copyright registrations for posters and artwork only (and none related to the Plaintiffs' sound recordings that Defendants now profess to co-own); a spreadsheet identifying basic information about the merchandise and recordings at issue that apparently was generated for purposes of the litigation (as opposed to primary documents related to these works); printouts of webpages from Defendants' website; and three non-indexed massive MP3 files containing 68 hours of sound recordings strung together in a virtually unusable form.  (Beringer Decl. ¶¶ 9-10).

Gibson, Dunn & Crutcher LLP

Most troubling, during the conference it became crystal clear that Defendants had not even begun to search for many categories of responsive documents, much less gather and produce them. (*Id.* ¶ 13).  With respect to category after category of the most basic, responsive documents – such as copyright registrations in the sound recordings, agreements between predecessors-in-interest to Defendants and the Musical Artists, and Defendants' negotiations relating to the transactions by which they acquired the assets in question – Defendants' counsel repeatedly stated that she had "to check" to see what documents were in Defendants' possession, even though Defendants had been aware of the categories of documents called for by Plaintiffs' requests – and had agreed to produce all documents responsive to those requests – for months.  (*Id.*)  Defendants' counsel even seemed unaware of basic activities in which Defendants are indisputably engaged – such as the unlawful reproduction of vintage posters featuring Plaintiffs' names, likenesses, and trademarks – that form a significant part of Plaintiffs' claims against Defendants.  For example, when Plaintiffs' counsel pointed out that Defendants had not produced documents relating to posters that have been reprinted by the Defendants – such "Poster Reprints" and "Serigraphs" are advertised on Defendants' website as "extremely high quality reproductions of some of the most significant posters in our collection" – Defendants' counsel demanded that Plaintiffs' counsel provide an "example" of such a poster on the website before she would search for responsive documents.  (*Id.*)  Plaintiffs' counsel subsequently located an example on the website, at which point Defendants' counsel conceded knowing of such reproductions all along, although counsel still had no information concerning documents concerning those reproductions.  (*Id.*)

> **2.    Defendants' Refusal To Provide Complete, Substantive Interrogatory Responses**

Defendants also have refused to provide complete, substantive responses to Plaintiffs' interrogatories, despite their representations to this Court that they would do so.

With respect to the interrogatories, this Court issued an Interim Order dated June 28, 2007 denying Plaintiffs' first Motion to Compel without prejudice and ordering the parties to meet and confer over them.  (Interim Order Re Plaintiffs' Motion to Compel at 1, Docket No. 66, entered June 28, 2007).  In this Interim Order, this Court made clear that Defendants were obligated to provide Plaintiffs with information reasonably needed to litigate this case.  As this Court observed:

Gibson, Dunn &
Crutcher LLP

6

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

This is a complex lawsuit with numerous parties, numerous claims and counterclaims, and numerous items of intellectual property in dispute.  Thus, a far greater number of interrogatories are warranted than is usually the case.  While the court expects the parties to be efficient with their interrogatories, the court also intends to ensure that the parties are able to obtain the information they reasonably need to litigate this case.

(*Id.* at 2).

Following this Court's directive, Plaintiffs' counsel and Defendants' counsel reached an agreement on the interrogatory responses that Defendants would provide to Plaintiffs, which agreement was codified in a Joint Proposal Pursuant To Interim Order Re Plaintiffs' Motion to Compel, filed on July 19, 2007 ("Joint Proposal") (Docket No. 82).  Specifically, the parties agreed that Defendants would provide "complete substantive responses" to Plaintiffs' Interrogatories, as modified by Plaintiffs' counsel in a letter to Defendants' counsel dated July 8, 2007.  (Beringer Decl. ¶ 17 and Ex. H).  The Joint Proposal states in pertinent part:

Defendants have **agreed** to provide complete substantive responses to Plaintiffs' Interrogatories, as modified by Plaintiffs' July 8, 2007 letter attached hereto as Exhibit A.  Defendants agree to provide the information requested in Section I of Exhibit A by no later than August 22, 2007.

(Docket No. 82 ¶ 1).  As a result of this agreement, Plaintiffs did not renew their motion to compel substantive interrogatory responses, and this Court did not enter any order compelling Defendants to furnish complete and substantive interrogatory responses.

Defendants subsequently failed to provide Plaintiffs with the agreed-upon interrogatory responses.  Rather, on August 23, 2007, Defendants provided Plaintiffs with a seven-page letter purporting to set forth "in an informal manner" the required information. (*Id.* Ex. I).  As explained more fully below, the letter failed to provide virtually any of the specific information that Defendants had agreed to provide and was not verified by Defendants, as required by Fed. R. Civ. P. 33(b).

Despite numerous meet-and-confer efforts, Defendants refused to provide additional responses to Plaintiffs' interrogatories or to verify their responses, contending, despite the Joint Proposal and Rule 33(b), that they were not obligated to do anything more than "attempt to provide additional information on an informal basis."  (Beringer Decl. ¶ 20 & Ex. I n.1).

Given this factual backdrop, Plaintiffs had no choice but to file the present motion.

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2) SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

## III.    ARGUMENT

**A.    The Court Should Compel Defendants To Produce Immediately All Non-Privileged Documents In Their Possession, Custody Or Control**

Federal Rule of Civil Procedure 37(a)(2)(B) provides in pertinent part that "if a party, in response to a request for inspection submitted under Rule 34, fails to . . . permit inspection as requested, the discovering party may move for an order . . . compelling inspection in accordance with the request." Fed. R. Civ. P. 37(a)(2)(B).

In the present case, Defendants still have not produced volumes of responsive documents that they promised to produce, and they refuse to commit to a date certain by when they will do so.  Thus, four months after Defendants served their initial discovery responses and two months after the July 10 hearing, Defendants still have not produced the vast majority of documents responsive to Plaintiffs' requests, despite repeatedly agreeing to do so.  Exhibit 1 to this Motion lists each of Plaintiffs' document requests at issue in this motion, as well as Defendants' responses thereto – in each case agreeing to produce the requested documents (either initially, in their supplemental responses, or on the record before this Court).

As detailed in Plaintiffs' meet and confer letters of July 8 and August 27, the holes in Defendants' production are gaping.  (Beringer Decl. Exs. D & E).  Representative examples include:

- Prior to yesterday, Defendants had produced virtually no email or other electronically-stored information of any kind , including less than five emails to or from Defendant Bill Sagan.  (*Id.* ¶ 9).  Earlier yesterday, Defendants produced roughly 1000 pages of insignificant emails, apparently from the computer of only one of their many employees (Courtney Chatalas, Defendants' Director of Apparel Production and Design).  (*Id.* ¶ 23).  As of today, however, Defendants still have not produced any emails from dozens of key employees, including Defendant Bill Sagan, Katherine York, and Eric Johnson, among many, many others.

- Defendants have failed to produce the vast majority of contracts between the Musical Artists and the predecessors-in-interest from which the Defendants claim rights, including dozens of agreements contained in a "Signed Contract Inventory" that Defendants

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2) SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

acquired when they purchased the Bill Graham archives, as well as agreements involving artists signed to Sony BMG Music Entertainment. (Request Nos. 18, 19, 30, 67). These documents are absolutely critical to Defendants' claims to own rights in the sound recordings, video recordings, and the merchandise and memorabilia featuring Plaintiffs' intellectual property.

- Defendants have failed to produce the vast majority of documents concerning or supporting Defendants' chief defense to Plaintiffs' copyright infringement claims, namely that "[t]he recordings were made legally; Mr. Sagan has a filing cabinet filled with documentation to prove it," (*see, e.g.*, *Pipe Dream: Music Stash Recalls When Rock was Young*, THE WALL STREET JOURNAL ONLINE, Dec. 13, 2005). (Request Nos. 62, 66).

- Defendants have failed to produce any video recordings, despite having agreed at the July 10 hearing to produce any such recordings that Defendants have copied and/or licensed to third parties. Defendants have also failed to produce all of the sound recordings at issue here, including the original recordings and any versions supposedly enhanced by Defendants. (Request No. 41).

- Defendants have failed to produce any documents concerning any valuation or appraisal regarding the materials in dispute, including without limitation, appraisals performed by Paul Grushkin and Rick Pralinger that are known to exist and that specifically address the rights that any purchaser of the materials would be required to clear in order to exploit the materials, as well all communications relating thereto. (Request No. 55).

- Defendants have failed to produce any copyright registrations they have filed in the sound recordings at issue, despite the fact that Defendants have indisputably filed such registrations and such registrations are expressly called for by Plaintiffs' document requests, or any communications relating thereto. (Request No. 27).

- Defendants have failed to produce the vast majority of documents relating to any licenses or clearances granted by Defendants to any third party, or by any third party to Defendants, in connection with any of the sound recordings and/or audiovisual recordings in Defendants' possession. (Request Nos. 52, 61).

9

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

- Defendants have failed to produce virtually any document concerning any alleged infringement or violation by Defendants of any rights held by any third-party in connection with the recordings in dispute.  (Request Nos. 48-50).

- Defendants have failed to produce the vast majority of communications between Defendants and any musical performing artist or record company "concerning the right to sell, copy, license, publicly perform or otherwise exploit any sound recordings or audiovisual recordings in the Vault."  (Request No. 61).

- Defendants have failed to produce the vast majority of documents concerning the reproduction of Plaintiffs' Intellectual Property in connection with the exploitation of the disputed materials.  (Request No. 22).

- Defendants have failed to produce any documents concerning the "digitizing," "remix[ing]" and "re-master[ing]" of the audio and video recordings, including documents identifying the sound engineers and other technical personnel who performed services in connection with these activities, and documents reflecting the contributions made by these individuals.  (Request Nos. 38, 44).

- Defendants have failed to produce any documents relating to "the requisite Sound Exchange license fees with respect to Vault Radio" that Defendants claim to have paid, including but not limited to all documents and communications concerning Sound Exchange, statutory royalties, and Defendants' eligibility to pay same.  (Request No. 47).

- Defendants have failed to produce any non-privileged documents concerning any legal or business analysis, opinion, or assessment, concerning Defendants' right (or lack thereof) to sell, license, display, perform, copy, distribute, or otherwise exploit the disputed materials.  (Request No. 59).

- Defendants have failed to produce the closing binders and negotiation documents for each transaction in which the Defendants claim to have acquired rights from their predecessors-in-interest.  (Request Nos. 3-16).

- Defendants have failed to produce any documents concerning Defendants' sales, revenues, profits and expenses in connection with their exploitation of the specific materials at issue in this case.  (Request No. 53).

In sum, Defendants have engaged in classic stonewalling.  While professing to produce documents to Plaintiffs on a rolling basis "as soon as possible," Defendants apparently have not even begun to gather, much less to produce, the vast majority of outstanding documents; Defendants' counsel purport to be unaware of the existence of several of these documents (such as those related to Defendants' reproduction activities) which are known to exist; and Defendants have flatly refused to state *when* Defendants will complete their production. (Beringer Decl. ¶¶ 8, 12).[2]  Because Defendants steadfastly have refused to commit to a date by which their production will be completed, and because Defendants are being seriously prejudiced in their ability to move forward with this case – including having to postpone critical depositions – Plaintiffs request that the Court issue an order requiring Defendants to produce all outstanding documents by no later than September 28, 2007.

**B.      Defendants Have Failed To Provide Complete Or Meaningful Responses To The Interrogatories They Agreed To Answer, Again Because No Court Order Exists Compelling Them To Do So.  Accordingly, This Court Should Compel Defendants To Provide Substantive, Verified Responses To Plaintiffs' Interrogatories, As Set Forth In The Joint Proposal**

Federal Rule of Civil Procedure 37(a)(2)(B) provides in pertinent part that if a party "fails to answer an interrogatory submitted under Rule 33 . . . the discovering party may move for an order compelling an answer."  Fed. R. Civ. P. 37(a)(2)(B).  In the parties' Joint Proposal, Defendants agreed to provide "complete substantive responses to Plaintiffs' Interrogatories, as modified by the July 8, 2007 letter."  (Docket No. 82).  Despite this promise, Defendants' unverified, seven-page letter "response" fails to provide anything but empty, conclusory and generic responses to Plaintiffs' interrogatory responses, on the spurious ground that such responses are "an attempt to provide additional information on an informal basis," as opposed to pursuant to Rule 33.  The responses come nowhere close to providing the "separate[] and full[]" responses required by Fed. R. Civ. P. 33(b)(1)

---

[2]   In contrast, Plaintiffs' production is substantially complete for all parties whose depositions are now scheduled as well as parties for which no depositions have been scheduled.  (Beringer Decl. ¶ 24).

Gibson, Dunn & Crutcher LLP

or the "complete substantive responses" required by the Joint Proposal.  Accordingly, this Court should enter an order compelling Defendants to provide the required responses to each of the interrogatories detailed below.

### 1. The Identity And Format of Each Video Recording Featuring The Musical Artists

Plaintiffs' Interrogatories, as modified by the July 8, 2007 letter, requested that Defendants identify each sound or video recording in their possession featuring the Musical Artists' performances, as well as a description of the format of each recording they acquired.  (Docket No. 82, Ex. A Section I(1) & (2)).[3]  In response, Defendants have failed to identify a *single* video recording in their possession or custody featuring the musical performances of the Musical Artists, or to identify the original format of each such video recording.

### 2. The Source From Which Defendants Acquired Each Original Item

Plaintiffs also requested that Defendants identify the particular source from which they acquired each particular item featuring the Plaintiffs' intellectual property.  (Docket No. 82, Ex. A Section I(3)).  Despite agreeing to provide this information, Defendants have failed to identify the sources from which they acquired each specific item of memorabilia or merchandise (*e.g.*, t-shirts, posters, photographs) in their possession.  During the parties' August 28 meet-and-confer conference, Defendants' counsel represented that they had not done so largely because Defendants have no record of the particular source or seller from which they acquired specific items of memorabilia or merchandise.  (Beringer Decl. ¶ 20).  If that is the case, Defendants should provide a verified response confirming that they do not possess information responsive to this request, as the lack of such evidence is itself highly probative of the factual and legal bases for Defendants' defenses.  *See, e.g., General Cigar Co., Inc. v. Cohiba Caribbean's Finest, Inc.*, 2007 WL 983855, at *3 (D. Nev.

---

[3]  Because Defendants agreed to provide responses to Plaintiffs' Interrogatories as they were modified by Plaintiffs' July 8, 2007 letter, Plaintiffs cite herein to the modified requests for information contained in the July 8, 2007 letter, which in turn references the applicable interrogatory numbers.  In their first Motion to Compel, Plaintiffs set forth each disputed interrogatory, Defendants' (non)response, and the relevance of each request.  (Docket No. 54, Exh. A.)  Defendants also attach as Exhibits H and I to the Beringer Declaration Plaintiffs' July 8 letter and Defendants' August 23 letter.

Gibson, Dunn & Crutcher LLP

Mar. 30, 2007) ("If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information.").

**3.    The Identity of The Individuals Who Created Each Sound and Video Recording**

Defendants agreed to provide the identify of the specific individual(s) who created the original recordings Defendants acquired and are exploiting.  (Docket No. 82 Ex. A Section I(4)).  Once again, Defendants have refused to provide this information, and have asserted in a recent meet-and-confer conference that in most instances they simply do not know the identity of these individuals.  (Beringer Decl. ¶ 20).  If Defendants are not in possession of this information for certain recordings, they should so state under oath, as the lack of such evidence bears directly on Defendants' ability to support their contention that they are somehow "co-owners" of the recordings.  And where they know the information, Defendants should be required to identify the *specific* individuals who they contend created the particular recordings.

**4.    The Identity of Each Alleged Author of the Recordings and The Basis for Authorship**

Defendants also agreed to identify "[f]or sound or video recordings, the <u>Author</u> of the recording and the <u>specific contribution(s)</u> made by the Author to the recording(s)." (Docket No. 82 Ex. A Section I(5)).  Of necessity, this request requires Defendants to identify this information on a recording-by-recording basis, as the determination of copyright authorship in a particular work is highly fact-specific and assessed based on the creative contributions made by alleged author(s) to that particular work.  *See, e.g., Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) ("A joint work in this circuit requires each author to make an independently copyrightable contribution to the disputed work.") (citation and internal quotation marks omitted).

Instead, in their August 23, 2007 letter, Defendants respond to this request with a single paragraph, which purports to describe "generally" the authors in the recordings, and the creative contributions made by these unspecified authors:

> Bill Graham Presents ("BGP"), King Biscuit, Dinky Dawson, The Record Plant and Day on the Green and/or other predecessors in interest to Bill Graham Archives, LLC ("BGA") were co-authors of every sound and audiovisual recording obtained by BGA.

13

The specific contribution(s) made include producing the concerts, sound engineering, mixing and production, contribution other acoustical and technical expertise including capturing and electronically processing the sounds, and/or compiling and editing the sounds to make a final sound recording, and in certain circumstances, contributing vocal, visual or theatrical components. Contributions also include providing the financial support necessary to make the recordings possible, including for recording equipment, facilities, and staff, among other things.

(Beringer Decl. Ex. I p. 2 No. 5). This single-paragraph response fails to identify a single author for a single recording, or to identify the specific contributions made by any alleged author to any particular recording, making it impossible for Plaintiffs to assess the factual basis for Defendants' defense of co-ownership. For example, Defendants' response states that in "certain circumstances," the putative co-authors "contribut[ed] vocal, visual or theatrical components." (*Id.*) Plaintiffs are entitled to know when these supposed "circumstances" applied (and when they did not) and what specific components allegedly were contributed to particular recordings. It is also insufficient for Defendants to assert that unspecified "other predecessors in interest" to BGA were co-authors in the recordings. If Defendants do not know the information requested, they are obligated to state this under oath, rather than provide a general and evasive response.

### 5. The Circumstances or Purposes For Which Specific Items Were Created

Defendants are required to provide "a brief description of the creation of [each] item [featuring Plaintiffs' Intellectual Property]," as well as "a brief description of the purpose for which the item was originally created." (Docket No. 82 Ex. A Section I(6)&(7)). In response, Defendants have referred Plaintiffs to three ranges of documents in their production that fail to provide the information sought. For example, although certain of the referenced documents identify particular recordings as "soundboards" or "multitrack," they in no way contain a "brief description" of *the purpose* for which these recordings were made or any information at all concerning how or where these recordings were made. Again, Defendants should be required to provide "complete substantive responses," including identifying any recordings for which they do not possess this information.

### 6. A Basic Description of Any Original Contracts Made In Connection With the Creation of Each Item at Issue

Defendants agreed to provide "the identity and a basic description of any original contracts, written or oral, made in connection with the creation of the original" memorabilia and recordings at

14

Gibson, Dunn & Crutcher LLP

issue.  (Docket No. 82 Ex. A Section I(8)).  The response contained in Defendants' August 23, 2007 letter is woefully inadequate:

> These include the consent obtained by Bill Graham and/or BGP from each performing artist prior to creating each sound and/or audiovisual recording.  King Biscuit, Dinky Dawson, The Record Plant and Day on the Green and/or other predecessors in interest to Bill Graham Archives, LLC ("BGA") entered oral and/or written agreements with each performing artist prior to creating each sound and/or audiovisual recording. . . .

(Beringer Decl. Ex. I p. 3 No. 8).

Most fundamentally, this response fails to identify a single specific agreement for any specific recording, let alone a "basic description" of each alleged agreement, as required.  Nor do Defendants reference the production number of any of the alleged "written agreements" referenced in their responses, or in any way indicate whether a particular alleged agreement was "written" or "oral."  Likewise, Defendants fail to provide a basic description of the terms of any of the alleged agreements.  In short, Defendants' general reference to "consent" or to unspecified "oral and/or written agreements" falls well short of their obligation to identify and describe specific contracts.  Finally, Defendants do not provide *any* information concerning agreements made with the Plaintiffs or Musical Artists in connection with the memorabilia they acquired.  If Defendants are unable to provide this information, they should so state.  Otherwise, Defendants should be required to provide specific and responsive information on a contract-by-contract basis.

### 7.    The Identity of Reproductions and Source of Reproduction

Although Defendants were required to identify whether each item containing Plaintiffs' Intellectual Property "is a reproduction of an item acquired by Defendants, and if so, the source or item from which the reproduction was made," Defendants have failed to do so.  (Docket No. 82 Ex. A Section I(9)).  Instead, Defendants have referred Plaintiffs to a handful of invoices that refer to unclear memorabilia and do not cover the vast majority of items (such as fine art prints, serigraphs and posters) that Defendants' own website states are reproductions.  (Beringer Decl. Ex. I p. 4 No. 9).  Defendants should identify each item they are offering for sale that is a reproduction, and identify the particular article from which each such reproduction was made, as required.

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2) SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

## 8.   Whether Each Sound Recording Has Been Duplicated Or Publicly Performed

Likewise, although Defendants agreed to identify whether each item featuring Plaintiffs' intellectual property "has been <u>duplicated or publicly performed</u> (for sound/video recordings)" (Docket No. 82 Ex. A Section I(11)), their letter "response" consists entirely of a reference to three CDs containing approximately 68 hours of sound recordings, which provide absolutely no indication whether Defendants have duplicated or publicly performed specific sound recordings.  Nor have Defendants provided this information for the numerous video recordings in their possession that feature the performances of the Musical Artists.

## 9.   A Basic Description of Communications, Negotiations and Agreements Between Defendants and Any Third Party Concerning The Potential Exploitation of the Acquired Materials

Defendants agreed to "identify and provide a basic description of any communications, negotiations and agreements between Defendants and any third party concerning the potential exploitation of the Acquired Materials."  (Docket No. 82 Ex. A p. 4 No. 1).  In their August 23, 2007 letter, Defendants provide this information solely with respect to communications and negotiations between certain parties in this action.  Defendants have failed to provide *any* information concerning their communications and negotiations with a *single third party*, as required.

## 10.   Dates of Employment and Job Descriptions of Defendants' Employees

Finally, although Defendants agreed to "[i]dentify Defendants' past and present employees as requested in Interrogatory No. [27]" (which in turn requested that Defendants identify the names, titles, current contact information and dates of employment for their current and former employees) (Docket No. 82 Ex. A p. 4), Defendants instead have furnished only a single page listing the names of 55 employees.  (Beringer Decl. Ex. I).[4]  Defendants have refused to state whether these individuals are current or former employees or to provide a title or basic job description for them.  Defendants should be required to provide such basic information immediately, particularly given that Plaintiffs agreed (on the record) to withdraw their request for documents reflecting this information in

---

[4]   Plaintiffs have not attached to the Beringer Declaration the list of employees (as well as another attachment) labeled by Defendants as "Highly Confidential – Attorneys' Eyes Only."

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2) SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)

exchange for Defendants agreement to provide this information in their interrogatory responses. (*See* Transcript at 28:14-18).

### 11.   Verification Pursuant to Fed. R. Civ. P. 33(b)

Plaintiffs also seek a directive that Defendants verify their interrogatory responses, as required by Fed. R. Civ. P. 33(b)(1).  Defendants have stated that they will not verify their supplemental responses and insist that they are under no obligation to do so because, according to Defendants, their responses constitute "merely an attempt to provide additional information on an informal basis."  (Beringer Decl. Ex. I n.1).  Defendants' supplemental responses are nothing of the sort.  To the contrary, the parties' Joint Proposal confirms Defendants' agreement to provide "responses to Plaintiffs' Interrogatories, as modified by Plaintiffs' July 8, 2007 letter."  (Docket No. 82 ¶ 1).

### IV.   CONCLUSION

Defendants' five months of foot-dragging and stonewalling is seriously prejudicing Plaintiffs' ability to litigate this case.  Defendants must be compelled at once to produce all outstanding documents and to provide complete, substantive, and verified interrogatory responses, all of which they have agreed to do but simply have not done.

DATED:  September 11, 2007                         Respectfully submitted,

                                                   GIBSON, DUNN & CRUTCHER LLP
                                                   Jeffrey H. Reeves
                                                   S. Ashlie Beringer
                                                   Joshua A. Jessen
                                                   Laura M. Sturges

                                                   By: _____/s/_____
                                                             S. Ashlie Beringer
                                               Attorneys for Plaintiffs and Counter-Defendants

In accordance with Civil Local Rule 5-4 and General Order No. 45(X)(B), I, Joshua A. Jessen, declare under penalty of perjury under the laws of the United States of America that I have the concurrence of Ms. Beringer to this document.

                                                _____/s/_____
                                                       Joshua A. Jessen

PLAINTIFFS' SECOND MOTION TO COMPEL (1) PRODUCTION OF DOCUMENTS AND THINGS, AND (2)
SUBSTANTIVE, VERIFIED RESPONSES TO INTERROGATORIES – 06-07727 (JW) (PVT)