UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GRATEFUL DEAD PRODUCTIONS, et al., <br><br>    Plaintiffs, <br><br>    v. <br><br>WILLIAM E. SAGAN, et al. <br><br>    Defendants. <br><br>AND RELATED COUNTERCLAIMS | Case No.: C-06-07727 JW (PVT) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL** |

**INTRODUCTION**

Plaintiffs Grateful Dead Productions, Cadestansa LLC, a limited liability company on behalf of Carlos Santana, Jimmy Page, Robert Plant, John Paul Jones, Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson and George Morrison, Fantality Corporation, Sony BMG Music Entertainment, BMG Music and Arista Records (collectively "plaintiffs") move to compel defendants William E. Sagan, Norton LLC and Bill Graham Archives d/b/a Wolfgang's Vault (collectively "defendants") to produce non-privileged documents responsive to 87 document requests and to provide complete and verified responses to interrogatories as

agreed by the parties pursuant to a July 19, 2007 interim order. Defendants oppose the motion. On October 19, 2007, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel and for the reasons set forth below, plaintiffs' motion to compel is granted in part and denied in part.[1]

**BACKGROUND**

Plaintiffs Carlos Santana, Jimmy Page, Robert Plant, John Paul Jones, Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson and George Morrison are renowned recording and musical artists in the rock and roll music genre. Plaintiffs Grateful Dead Productions, Cadestansa LLC, Fantality Corporation, Sony BMG Music Entertainment, BMG Music and Arista Records own and administer the intellectual property rights for these various artists. Before these musical artists gained widespread fame in rock and roll history, Bill Graham promoted them at noted concert venues such as The Fillmore, Fillmore West, Winterland and Fillmore East during the 1960s. Indeed, Bill Graham added his own imprimatur to the numerous concerts he promoted by providing fans and concert-goers with free posters and bowls of apples. Bill Graham's company, Bill Graham Presents, undertook the significant responsibility of promoting the various artists and their concerts and entered into agreements with each of them to promote and organize concerts and tours, in exchange for a percentage of ticket revenues. As part of their effort to facilitate Bill Graham's promotional duties of each of them, the various artists granted his company a license to use their names, likenesses, trademarks and other intellectual property for promotional items, including concert posters, tickets, handbills and photographs of the various artists. Other miscellaneous items bearing the various artists' intellectual property included t-shirts, magnets, key chains, mugs, cardboard cut-outs, calendars and folders. ("swag"). In light of his expansive career as a concert promoter that spanned more than thirty years, Bill Graham amassed a vast collection of promotional concert items which he stored in a warehouse. The warehouse also contained thousands of tapes of live concert performances of the various musical artists he had promoted. Apparently, these audio and video

---

[1] The holding of this court is limited to the facts and particular circumstances underlying the present motion.

1 recordings of concerts were never publicized or sold to the public.

2 In 1991, Bill Graham died in a helicopter crash. His estate sold the company Bill Graham Presents to SFX Entertainment, which was later acquired by Clear Channel Entertainment. Individual defendant William E. Sagan eventually purchased the archives of Bill Graham Presents from Clear Channel Entertainment and continued to purchase additional materials that featured plaintiffs' names, likenesses, photographs and other intellectual property without their approval.

Plaintiffs complain that defendants currently own and operate a website known as <www.wolfgangsvault.com> that sells and profits from the use of plaintiffs' names, voices, musical performances, photographs, likenesses, trademarks and other intellectual property. The website purports to sell vintage and reproduced promotional merchandise of plaintiffs. The promotional merchandise includes, but is not limited to, concert posters, serigraphs, handbills, postcards, photographs, apparel and various other swag. In addition, the website features plaintiffs' names, voices, musical performances, photographs, likenesses and trademarks to advertise and promote the sale of the merchandise. Defendants have not obtained permission from plaintiffs to advertise, reproduce or sell any of the archival or other promotional items previously owned by Bill Graham Presents. Plaintiffs complain that defendants are exploiting plaintiffs' fame for improper gain and that defendants' products and services confuse consumers into believing that they have been sponsored or otherwise endorsed by plaintiffs. As a result of their unsuccessful efforts to prevent further unauthorized conduct by defendants, on December 18, 2006 plaintiffs filed an action alleging violations of the Lanham Act, trademark counterfeiting and dilution, bootlegging, copyright infringement and other state law claims.

On September 11, 2007, plaintiffs filed a second motion to compel. On September 18, 2007, defendants filed their opposition and on September 25, 2007, plaintiffs filed their reply.

**DISCUSSION**

**I.    Plaintiffs' Motion to Compel Further Production**

Initially, plaintiffs had moved to compel defendants to produce documents responsive to 17 requests for production.[2] At a hearing held before this court on July 10, 2007, defendants agreed to produce documents responsive to at least 15 of these disputed document requests. Plaintiffs now complain that defendants have not produced documents they had previously agreed to produce and seek a firm deadline for production of those documents. Plaintiffs further complain that defendants have not produced *all* of the documents responsive to the first set of document requests which totals 87 document requests. For example, plaintiffs allege that defendants have not produced critical documents relating to, *inter alia*, negotiations or communications with third parties concerning intellectual property rights, agreements between plaintiffs and defendants' predecessors-in- interest, royalty payments made to Sound Exchange and many, many other relevant documents. Indeed, plaintiffs outline in their moving papers numerous and representative examples of defendants' glaring deficiencies of production. *See, e.g.,* Plaintiffs' Second Motion to Compel, ppgs. 8-11. Finally, plaintiffs complain that they have been severely prejudiced by the delinquent production and their prosecution has been hampered by defendants' ongoing and "classic stonewalling" tactics.

Defendants argue that they have engaged in "substantial efforts" to produce documents responsive to the document requests. To that end, defendants have produced more than 10,000 documents. Defendants further argue that representative examples of scant production identified in plaintiffs' moving papers contain numerous misstatements and mischaracterizations of the documents produced and that production has merely encompassed documents sought by plaintiffs' own requests for production. Given the substantial number of documents and requests for production involved, defendants argue that production has been diligent and ongoing.

Prior to the commencement of the July 10, 2007 hearing, defendants had already agreed

---

[2] Plaintiffs' first set of document requests included 87 document requests. Defendants originally objected to 54 of these requests. Following extensive meet and confer efforts, the parties narrowed the disputed document requests to 17 requests. Therefore, it was these 17 document requests that were the subject of the hearing before the court.

to produce documents responsive to at least 72 of the document requests set forth in plaintiffs' first set of document requests. At the July 10, 2007 hearing, plaintiffs withdrew document request no. 1 and defendants agreed to produce documents responsive to document request nos. 22, 33, 41, 42, 48, 49, 50, 53, 54, 55, 61, 65, 70, 76 and 89 subject to certain limitations set forth on the record.[3] As defendants have already agreed to produce responsive documents, plaintiffs' motion to compel production is granted in part and denied in part. Plaintiffs had previously withdrawn document request no. 1 and essentially withdrew document request no. 89 by their waiver of production of documents and agreement to obtain the information by interrogatory. However, plaintiffs complained at the October 19, 2007 hearing that defendants had not honored their agreement to provide certain discovery in interrogatory responses. Accordingly, plaintiffs' motion to compel production of documents responsive to document requests other than document request nos. 1 (and the two other document requests, which defendants did not accede to at the hearing) is granted. Defendants shall produce *all* responsive and electronic documents no later than October 26, 2007.[4]

**II.     Plaintiffs' Motion to Compel Further and Verified Interrogatory Responses**

Plaintiffs further move to compel defendants to provide substantive and verified interrogatory responses. On June 28, 2007, the court filed an interim order requiring the parties to meet and confer to determine an agreed upon number of interrogatories and a proposed

---

[3] During the hearing, the parties agreed that production by Sony BMG artists would be limited to sound recordings and not merchandise. In response to document request no. 41, defendants had agreed to produce copies of sound recordings that had been copied, streamed or licensed. With respect to document request nos. 48 and 49, plaintiffs agreed to exclude cease and desist letters to and from defendants which relate to copyrights involving artwork or photographs. With respect to document request no. 42, plaintiffs agreed to the production of paper copies of the alleged infringing merchandise. With respect to document request no. 89, plaintiffs agreed to obtain the information from an interrogatory response. *See,* July 10, 2007 Hearing Tr. 27:10-25; 28:1-25.

[4] At the October 19, 2007 hearing, plaintiffs alleged that defendants failed to respond to certain interrogatories that they had previously agreed to respond to at the July 10, 2007 hearing. Representative examples include, but are not limited to, document requests no. 41 and 89. To the extent that defendants have not complied with their July 10, 2007 agreement to respond to document request nos. 41 and 89 as interrogatories, plaintiffs shall inform defendants whether the discovery requests they now seek are document requests or interrogatories. Regardless of whether the discovery requests are identified as document requests or interrogatories, plaintiffs' motion to compel these discovery requests is granted.

manner for calculating the number of interrogatories propounded by each party (including a proposal of how the interrogatories already served should be counted). Pursuant to the interim order, the parties filed a joint proposal and set forth the specific terms of their agreement as follows:

    1. Defendants agreed to provide substantive responses to plaintiffs' interrogatories (as modified by plaintiffs' July 8, 2007 letter) no later than August 22, 2007;

    2. Parties agreed that each party may propound 100 interrogatories. In the event, the court determined that plaintiffs' previously propounded interrogatories had already exceeded 100 interrogatories, defendants were permitted to propound a comparable number of interrogatories in excess of 100 interrogatories so that each side was allowed to propound an equal number of interrogatories;

    3. The parties agreed that an interrogatory directed to, or seeking information concerning, some or all of plaintiffs or some or all of defendants shall be deemed one interrogatory. The term "plaintiffs and/or musical artists" would be deemed to be one entity for purposes of responding to discovery;

    4. The parties agreed that each discrete subpart contained in an interrogatory would be deemed to be a separate interrogatory. An explanatory phrase or example that operates to clarify a broader category of information sought should not be deemed a discrete subpart, whereas phrases that broaden, expand, or add new categories to the scope of an interrogatory should be deemed separate interrogatories; and

    5. The parties agreed to the manner of counting interrogatory nos. 2, 6, 7, 8, 9, 19-27 previously propounded by plaintiffs.

Joint Proposal Pursuant to Interim Order re Plaintiffs' Motion to Compel filed on July 19, 2007. (the "joint proposal"). However, the parties disagreed to the manner of counting interrogatory nos. 1, 3, 4, 5, 10-18 propounded by plaintiffs. Plaintiffs assert they have propounded 68 interrogatories and defendants contend that plaintiffs have propounded 145 interrogatories.

    As an initial matter, the court adopts terms 2-5 set forth above and in the July 19, 2007 joint proposal agreed to by the parties.

Rule 33 counts each interrogatory and "all discrete subparts." Fed. R. Civ. P. 33(a). "Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects." Advisory Committee Notes of 1993 to Fed. R. Civ. P. 33. A court "construed the term 'discrete subparts' as meaning that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'" *Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D. Ca. 1998)(internal citations omitted). Other courts have found that where the question is independent of the other and can "stand alone," it is not subsumed by the first question and can be counted as a separate interrogatory. *See, e.g., Kendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684, 686 (D. Nev. 1997). Indeed in this district, a court found that a single interrogatory that sought information about 26 accused products counted as 26 discrete subparts. *Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 (N.D. Ca. 2004).

As such, the court counts the disputed interrogatories as follows:

1. Interrogatory no. 1 includes six discrete subparts as they have been identified by plaintiffs in their July 19, 2007 Separate Proposal and counts as six interrogatories;

2 Interrogatory no. 3 counts as a single interrogatory;

3. Interrogatory no. 4 includes five discrete subparts as they have been identified by plaintiffs in their July 19, 2007 Separate Proposal and counts as five interrogatories;

4. Interrogatory no. 5 includes six discrete subparts as they have been identified by defendants in their July 19, 2007 Proposal and counts as six interrogatories;

5. Interrogatory no. 10 includes five discrete subparts, three of which are the subparts identified by plaintiffs in their July 19, 2007 Separate Proposal and two additional subparts for the two mediums (sound recordings and audiovisual recordings) as identified by defendants in their July 19, 2007 Proposal and counts as five interrogatories;

6. Interrogatory no. 11 includes two discrete subparts, one for each medium (sound recordings and audiovisual recordings) and counts as two interrogatories;

7. Interrogatory no. 12 includes two discrete subparts as identified by defendants in

their July 19, 2007 Proposal and counts as two interrogatories;

     8.     Interrogatory no. 13 includes four discrete subparts as identified by defendants in their July 19, 2007 Proposal and counts as four interrogatories;

     9.     Interrogatory no. 14 includes two discrete subparts for the two mediums (sound recordings and audiovisual recordings) and counts as two interrogatories;

     10.     Interrogatory no. 15 includes two discrete subparts as identified by plaintiffs in their July 19, 2007 Separate Proposal and counts as two interrogatories;

     11.     Interrogatory no. 16 counts as a single interrogatory;

     12:     Interrogatory no. 17 counts as a single interrogatory; and

     13.     Interrogatory no. 18 counts as a single interrogatory.

In sum, disputed interrogatory nos. 1, 3, 4, 5 and 10-18 total 38 interrogatories propounded by plaintiffs. Accordingly, plaintiffs' motion to compel further and verified responses is granted. Defendants shall serve complete and verified responses to interrogatories no later than October 26, 2007.

### III. Discovery Status Conference

In addition to hearing plaintiffs' motion to compel, the court had previously ordered that the parties appear for a discovery status conference on October 19, 2007. During the hearing, the parties raised further discovery matters and the court now rules as follows:

(1) Defendants shall produce the discovery set forth above on a rolling basis with the entire production to be completed no later than October 26, 2007;

(2) Parties shall meet and confer with technical experts and determine whether copies of original audio and/or video recordings (in possession of defendants and responsive to certain requests for production) may be made without the spoliation of evidence. Parties are to submit briefs on their respective positions no later than November 1, 2007;

(3) Parties shall further brief their respective positions regarding plaintiffs' motion to stay further discovery related to defendants' counterclaims in the action. The briefs shall be no longer than 5 pages and shall be due no later than November 1,

2007; and

(4) Plaintiffs' motion for additional time to depose defendant William Sagan is dismissed without prejudice as premature.

The parties shall appear for a further discovery status conference on November 2, 2007 and are both allowed to raise any pending discovery issues. As the court noted during the hearing and in prior orders, the parties are urged to extensively meet and confer in advance of the court hearing and are cautioned that unreasonable conduct may be sanctionable.

IT IS SO ORDERED.

Dated: *October 22, 2007*

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge