IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Grateful Dead Productions, et al., | NO. C 06-07727 JW |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS** |
| v. | |
| William E. Sagan, et al., | |
| Defendants. | |

## **I.   INTRODUCTION**

Plaintiffs[1] bring this action against William Sagan, Norton LLC, and Bill Graham Archives LLC (collectively, "Defendants" or "Counterclaimants"), alleging, *inter alia*, trademarks and copyrights infringement pursuant to 15 U.S.C. § 1114; 17 U.S.C. § 101, *et seq*. Plaintiffs allege that Defendants sold merchandise incorporating Plaintiffs' intellectual property and broadcast Plaintiffs' copyrighted musical performances without authorization.

Presently before the Court are the parties' Motions to Dismiss.[2] The Court found it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-1(b). Based

---

[1] Plaintiffs are Grateful Dead Productions, Cadestansa, LLC, Carlos Santana, Jimmy Page, Robert Plant, John Paul Jones, Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson, George Morrison, Fantality Corp., Sony BMG Music Entertainment, BMG Music, and Arista Records.

[2] (1) Defendants' Motion to Dismiss Plaintiffs' Eleventh and Twelfth Claims (hereafter, "Defendants' Motion," Docket Item No. 133); and (2) Plaintiffs' Motion to Dismiss Defendants' Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Counterclaims (hereafter, "Plaintiffs' Motion," Docket Item No. 186).

on the papers submitted to date, the Court GRANTS in part, and DENIES in part, the parties' Motions to Dismiss.

## II. BACKGROUND

**A.     The Court's October 17, 2007 Order**

In an October 17, 2007 Order, the Court set forth the relevant allegations in Plaintiffs' Complaint and Defendants' Counterclaim[3] and certain details regarding the parties involved in this complex litigation. (See Order Granting in Part, Denying in Part Counter-Defendants' Motions to Dismiss; Granting Plaintiffs' Motion for Leave to File a Second Amended Complaint, hereafter, "Order," Docket Item No. 123.) In the October 17 Order, the Court granted in part and denied in part Plaintiffs' motion to dismiss Defendants' counterclaims as follows: The Court,

(1) dismissed Defendants' Fifth Counterclaim for tortious interference with prospective economic advantage, on the ground that Defendants failed to allege that Plaintiffs proximately caused economic harm to them. The Court granted Defendants leave to amend (Order at 9);

(2) denied Plaintiffs' motion to dismiss Defendants' Seventh Counterclaim for breach of contract (Order at 9-10);

(3) dismissed Defendants' Sixth Counterclaim for civil conspiracy without prejudice, on the ground that Defendants were merely attempting to plead Plaintiffs' secondary liability for other torts already alleged (Order at 10);

(4) dismissed Defendants' Second, Third, and Eighth Counterclaims, which were only asserted against third parties that had not properly been joined to this action and over which supplemental jurisdiction did not exist. Defendants were given leave to amend, however, to state facts establishing supplemental jurisdiction over these Counterclaims (Order at 11-12);

(5) abstained from addressing issues surrounding Defendants' First Counterclaim for declaratory relief until the filing of an Amended Counterclaim, so that joinder issues surrounding third-party Counterdefendants could first be resolved (Order at 12); and

(6)  granted Plaintiffs leave to file a Second Amended Complaint (Order at 12).

---

[3] The Court addressed Plaintiffs' Motion to Dismiss Defendants' Second, Third, Fifth, Sixth, Seventh, and Eighth Counterclaims. (Order at 1.) The Court also addressed third-party Counter-Defendant Bravado's Motion to Dismiss Defendants' First, Fifth, Sixth, and Eighth Counterclaims. (Id. at 1-2.)

**B.      Amended Pleadings**

In light of the October 17 Order, both sides filed amended pleadings. On October 18, 2007, Plaintiffs filed a Second Amended Complaint. (hereafter, "SAC," Docket Item No. 124.) Plaintiffs' Second Amended Complaint alleges eighteen causes of action: (1) Federal Trademark Infringement (15 U.S.C. § 1114); (2) False Endorsement (15 U.S.C. § 1125); (3) Trademark Counterfeiting (15 U.S.C. §§ 1114-17); (4) Trademark Dilution (15 U.S.C. § 1125(c)); (5) Copyright Infringement; (6) Violation of the Anti-Bootlegging Act (17 U.S.C. § 1101); (7) Right of Publicity (Cal. Civ. Code § 3344); (8) Right of Publicity of Deceased Personality (Cal. Civ. Code § 3344.1); (9) Misappropriation of Common Law Right of Publicity; (10) Common Law Copyright Infringement; (11) Intentional Interference with Contractual Relations; (12) Fraud on the Copyright Office; (13) Unfair Competition (Cal. Bus. & Prof. Code § 17200); (14) Unfair Competition (Cal. Bus. & Prof. Code § 17500); (15) Common Law Unfair Competition; (16) Unjust Enrichment; (17) Accounting; and (18) Declaratory Judgment. (See SAC.)

On November 1, 2007, Defendants filed an Answer to Second Amended Complaint and First Amended Counterclaim. (hereafter, "ASAC," Docket Item No. 142.) Defendants' Counterclaim includes causes of action against all Plaintiffs, as well as third parties Bravado International Group Merchandising Services, Inc. ("Bravado"), Warner Music Group Corp. ("Warner"), Robert Weir ("Weir"), Led Zeppelin, and Rhino Entertainment ("Rhino"). See id. Defendants allege eleven causes of action: (1) Declaratory Judgment; (2) Fraudulent Deceit; (3) Breach of Contract (against Sony BMG, BMG Music, and Arista); (4) Tortious Interference; (5) Breach of Contract (asserted against Rhino and Grateful Dead Productions ("GDP") by BGA); (6) Breach of Contract (against Bravado, Plant, Page and Jones); (7) Intentional Interference with Contract (against Warner, Rhino, and GDP); (8) Unfair Competition (Cal. Bus.& Prof. Code §17200); (9) Libel (asserted by Sagan against Weir and GDP); (10) Copyright Infringement (asserted by BGA and Norton against GDP, Sony BMG, and BMG); (11) Business Defamation and Disparagement. Id.

C. **Stipulations of Dismissal**

On October 20, 2008, the parties filed seven stipulations of dismissal.[4] In response, the Court directed the parties to file a joint statement of clarification with respect to the parties and causes of action remaining in this case. (Docket Item No. 211.) On October 31, 2008, the parties filed a Joint Response to Order Directing Parties to Clarify Operative Causes of Action in Advance of November 17 Hearing. (hereafter, "Joint Response," Docket Item No. 212.)

With respect to Plaintiffs' Claims, the parties represent as follows:

(1) Plaintiffs Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson and George Morrison (the "Doors Plaintiffs") dismissed all of their claims with prejudice. (Joint Response at 1.) Counterclaimants dismissed all counterclaims against the Doors Plaintiffs, with prejudice. Accordingly the Doors are no longer a party to this action. (Id. at 4.)

(2) Plaintiffs dismissed the following claims in their entirety: (a) Federal Trademark Infringement; (b) False Endorsement; (c) Trademark Counterfeiting; (d) Trademark Dilution; (e) Right of Publicity; (f) Right of Publicity Deceased Personality; (g) Common Law Misappropriation of Rights of Publicity. (Id. at 1.)

With respect to Defendants' Counterclaims, the parties represent as follows:

(3) Defendants dismissed in their entirety the Fifth and Sixth Counterclaims for Breach of Contract and the Ninth Counterclaim for Libel. (Joint Response at 5.)

(4) Defendants dismissed with prejudice Grateful Dead Productions, Jimmy Page, Robert Plant, John Paul Jones, Bravado International Group, Fantality Corp., Cadestansa LLC, and Robert Weir in their entirety as Counterclaim Defendants from Defendants' Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh

---

[4] (Stipulation of Dismissal of Certain Claims by Plaintiffs Grateful Dead Productions, Cadestansa LLC on behalf of Carlos Santana, Jimmy Page, John Paul Jones, Robert Plant, and Fantality Corp. with Prejudice (Docket Item No. 204); Stipulation of Dismissal of all Claims by Plaintiffs Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson and George Morrison with Prejudice (Docket Item No. 205); Stipulation of Dismissal of Counterclaim Defendant Cadestansa, LLC, on behalf of Carlos Santana, as to Certain Counterclaims (Docket Item No. 206); Stipulation of Dismissal of Counterclaim Defendant Fantality Corp., as to Certain Counterclaims (Docket Item No. 207); Stipulation of Dismissal of Counterclaim Defendants Grateful Dead Production, Inc. And Rhino Entertainment Company, as to Certain Counterclaims (Docket Item 208); Stipulation of Dismissal of Counterclaim Defendants Jimmy Page, Robert Plant, John Paul Jones, Bravado International Group, Inc., as to Certain Counterclaims (Docket Item No. 209); Stipulation of Dismissal of Counterclaim Defendants Raymond Manzarek, Robby Krieger, John Densmore, Pearl Courson, George Morrison, with Prejudice (Docket Item No. 210); On November 11,2008, the parties also filed a Stipulation of Dismissal of Counterclaim Defendant Robert Weir (Docket Item No.213).)

The Court has approved all of these Stipulations. (See Docket Item Nos. 216-223.)

Counterclaims. Defendants dismissed the First Counterclaim against the above named parties as it relates to subjects other than the parties' rights and obligations regarding sound recordings asserted in Defendants' Answer to the Second Amended Complaint and the First Amended Counterclaims. (Id. at 4.)

Presently before the Court are Defendants' Motion to Dismiss and Plaintiffs' Motion to Dismiss.

### III.  STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or counterclaim may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

//

5

### IV. DISCUSSION

**A.     Plaintiffs' Motion to Dismiss**

Plaintiffs[5] move to dismiss Defendants' Second, Third, Fourth, Seventh, Eighth, Ninth, Tenth and Eleventh Counterclaims.[6]  (See Plaintiffs' Motion at 5.)  The Court considers each Counterclaim in turn.

**1.     Defendants' Second Counterclaim - Fraudulent Deceit**

Plaintiffs move to dismiss Defendants' Second Counterclaim on the ground that it is improperly asserted only against third-parties.[7]  (Plaintiffs' Motion at 17-19. )

Generally speaking, a counterclaim under Fed. R. Civ. P. 13 must be asserted against an "opposing party."  Fed. R. Civ. P. 13(a), (b); Metcalf v. Golden (In re Adbox, Inc.), 488 F.3d 836, 840 (9th Cir. 2007).  However, Rule 13(h) permits joinder of third-parties to a counterclaim so long as the provisions of Fed. R. Civ. P. 19, compulsory joinder, or Fed. R. Civ. P. 20, permissive joinder, are satisfied.  Under Rule 19, a person shall be joined as a party provided he is subject to service of process in the venue where joinder is sought, if joinder will not destroy subject matter jurisdiction, and if the person's joinder is required to accord complete relief among those already parties.  Fed. R. Civ. P. 19(a).  Under Rule 20, joinder is permissible if the claim against the person arises out of the same transaction or occurrence as that already at issue, and if there is any question of law or fact common to all the parties and persons to be joined.  Fed. R. Civ. P. 20(a).  "'Transaction' is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."  Schulman v. California, 237 F.3d 967, 979 (9th Cir. 2001).

---

[5] The Court refers to the original Plaintiffs and third-party Counterdefendants collectively as "Plaintiffs," for purposes of resolving each Counterclaim.

[6] Plaintiffs initially moved to also dismiss Defendants' Fifth and Sixth Counterclaims. These Counterclaims, however, were rendered moot by the October 20 Stipulations of Dismissal. (See Joint Response at 5.)

[7] Plaintiffs make the same contention with respect to Defendants' Seventh and Ninth Counterclaims.  (See Plaintiffs' Motion at 17.)  The Court finds that its analysis of this issue as to the Second Counterclaim will apply with respect to additional Counterclaims.

1    To add parties under Rule 13(h), the defendant must show that the court has a basis for the

2  assertion of federal jurisdiction over the additional parties, whether by supplemental jurisdiction

3  pursuant to 28 U.S.C. § 1367(a) or some independent ground. See Danner v. Himmelfarb, 858 F.2d

4  515, 522 (9th Cir. 1988); Safeco Ins. Co. of America v. Guyton, 692 F.2d 551, 555 n.5 (9th Cir.

5  1982); see also Moore v. Old Canal Fin. Corp., No. CV 05-205, 2006 U.S. Dist. LEXIS 21700 at *2

6  (D. Idaho March 29, 2006). Once a third-party has been properly joined, any additional claims

7  against that party over which the court also has subject matter jurisdiction may be asserted. See Fed.

8  R. Civ. P. 18.

9    Defendants' Second Counterclaim is asserted against third parties Warner Music Group

10 Corp. and Rhino Entertainment, as well as Plaintiff GDP.[8] With respect to this Counterclaim,

11 Defendants allege in relevant part:

> Warner, Rhino, and GDP induced BGA, through false promises of a potential transaction, to divulge highly confidential, proprietary business information. (ASAC ¶ 78.) Warner, Rhino and GDP, through their misrepresentations, omissions, and concealments, (1) copied concert recordings from Wolfgang's Vault and used such recordings for their own gain; and (2) made public statements about Bill Graham and BGA that can and did cause BGA's customers to download music and buy products from Plaintiffs' websites instead of from Defendants. (Id. ¶ 84.) Warner, Rhino and GDP were able to use BGA's propietary information to mount a formidable campaign against BGA. (Id. ¶ 85.) As a result of the conduct of Warner, Rhino and GDP and their highly publicized claims, BGA has lost revenues, lost visitors and customers on its websites, slowed its revenue growth and lost considerable good will among its customers and potential customers. (Id. ¶ 86.)

18   Given that these allegations are properly asserted against GDP, which is an original Plaintiff

19 in this action, the Court finds that Warner and Rhino are appropriately joined under Rule 20(a). The

20 basis for the Court's finding is that the claim against Warner and Rhino arises out of the same

---

[8] Plaintiff GDP is no longer a party to this action, having stipulated to a dismissal on October 20, 2008. The Court, however, treats GDP as a party-Plaintiff for purposes of its discussion of joinder and supplemental jurisdiction issues. The Court does not accept Plaintiffs' contention that GDP is a "sham defendant," and is thus incapable of serving as a predicate for a proper joinder. (See Plaintiffs' Motion at 17.) The Court is not in a position at the pleading stage to make such a fact-based determination. Further, considering that the parties have come to an agreement to dismiss GDP, Plaintiffs' contention has less merit than if Plaintiffs were to move to have GDP dismissed as a "sham defendant."

7

transaction or occurrence as the claim against GDP.[9]  See Fed. R. Civ. P. 20(a).  This dispute essentially involves contested ownership over various copyrights and trademarks.  All of the additional claims in this action, whether asserted by Plaintiffs or by Defendants, are ancillary to a determination of ownership in the disputed intellectual property.  Considering this basic "logical relationship" among the claims at issue, to the extent Defendants allege that third parties and Plaintiffs acted together or via similar means to undermine Defendants' rights in the disputed copyrights, the Court must find that joinder of those third parties is proper.  See Schulman, 827 F.3d at 979.

Accordingly, the Court DENIES Plaintiffs' Motion to Dismiss Defendants' Second Counterclaim for fraudulent deceit.

**2.    Defendants' Third Counterclaim - Breach of Contract**

Plaintiffs contend that the Court lacks supplemental jurisdiction over Defendants' Third Counterclaim for breach of contract against Sony BMG, BMG Music, and Arista.  (Plaintiffs' Motion at 21.)

Counterclaims that arise out of the same transactions or occurrences underpinning a plaintiff's original claim are "compulsory" and must be brought in the same action under Rule 13(a).  Fed. R. Civ. P. 13(a).  Courts have supplemental jurisdiction over compulsory counterclaims.  St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 594 (8th Cir. 2001).  Any counterclaim against the plaintiff that is not "compulsory," however, may be brought as a Rule 13(b) "permissive" counterclaim.  Fed. R. Civ. P. 13(b).

For the reasons articulated in the previous section, the Court finds that this breach of contract claim is properly asserted as a compulsory counterclaim under Rule 13(a), because it arises from the same transactions or occurrences as the claims originally asserted by Plaintiffs.  Again,

---

[9] In determining that joinder is proper under Rule 20(a) based on application of the transaction or occurrence test, the Court concurrently determines that supplemental jurisdiction over the Second Counterclaim is proper under 28 U.S.C. §1367(a), which provides for jurisdiction over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" under Article III of the U.S. Constitution.

8

there is an obvious "logical relationship" among the many claims and counterclaims that make up this overall dispute over a particular set of intellectual property rights. See Schulman, 237 F.3d at 979. As a consequence, the Court has supplemental jurisdiction over the compulsory breach of contract counterclaim.

Accordingly, the Court DENIES Plaintiffs' Motion to Dismiss Defendants' Third Counterclaim for breach of contract.

### 3. Defendants' Fourth Counterclaim - Tortious Interference

Plaintiffs move to dismiss the Fourth Counterclaim for tortious interference on the grounds that Defendants fail to adequately plead facts to state a claim on which relief can be granted.[10] (Plaintiffs' Motion at 6-7.)

In California, a claim of intentional interference with prospective economic advantage consists of the following elements: (1) an economic relationship between the plaintiff and a third party, that includes a probable future economic benefit for the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts. Pac. Gas & Elec. Co. v. Bear Stears & Co., 50 Cal. 3d 1118, 1126 n.2 (1990); Youst v. Longo, 43 Cal. 3d 64, 71 n.6 (1987). Additionally, a plaintiff must demonstrate that the conduct was wrongful by some measure other than the fact of interference. Della Penna v. Toyota Motor Sales, U.S.A., 11 Cal. 4th 376, 393 (1995).

With respect to tortious interference, Defendants allege:

> BGA maintains an economic relationship with the legions of fans of the legendary concerts produced by Bill Graham Presents and King Biscuit. (ASAC ¶103.) These fans are BGA's customers. (Id.) Counterclaim Defendants are well aware of the unique quality of the products and merchandise offered by BGA to its customers, and the economic advantage

---

[10] Plaintiffs also contend that the Fourth, Seventh, and Eighth Counterclaims should be dismissed on the basis of the litigation privilege. (Plaintiffs' Motion at 16.) The Court finds, however, that the amended Counterclaim adequately alleges wrongdoing distinct from the filing of this litigation, upon which Defendants' Counterclaims are based. This includes allegations of misuse of confidential information, misappropriation of Defendants' copyrighted works, and the making of repeated negative statements in order to influence the behavior of Defendants' customer base. (See ASAC ¶¶ 103-106.)

9

1    afforded to BGA through their ownership of such rare and cherished memorabilia. (Id. ¶
     104.) Counterclaim Defendants used highly confidential information about BGA to make
2    repeated negative statements about BGA and to access and copy BGA's sound recording and
     use them for Counterclaim Defendants' own purposes. (Id. ¶ 105.) Counterclaim
3    Defendants' conduct was intentional and caused BGA's consumers to cease visiting BGA's
     website and/or to cease purchasing products through BGA, to appropriate BGA's assets and
4    to drive BGA out of business. (Id. ¶ 106.)

5           Based on the above allegations, the Court finds that Defendants' counterclaim adequately

6    alleges each of the required elements for a tortious interference claim. Defendants allege that they

7    had an economic relationship with a "legion of fans" that created an existing customer base for the

8    products sold by Bill Graham Archives. Defendants allege that Plaintiffs knew BGA had a specific

9    customer base due to the unique quality of products owned and offered for sale by BGA.

10   Defendants further allege that Plaintiffs intentionally and unlawfully made repeated negative public

11   statements about BGA and copied sound recordings, owned by BGA, to disrupt sales between

12   BGA's and its existing customers. Finally, BGA alleges that as a result of Plaintiffs' conduct, BGA

13   suffered a financial loss from lost revenues and a loss of goodwill.

14          Plaintiffs contend, however, that Defendants' interference counterclaim is defective as a

15   matter of law, because it is premised on the filing of this lawsuit and because Defendants must

16   specifically identify a third party with whom they had an existing economic relationship. (Plaintiffs'

17   Motion at 9.) Although the Court previously found Defendants' claim for tortious interference

18   premature because it had been premised on Plaintiffs pursuit of this litigation,[11] Defendants' have

19   cured this defect in their Amended Counterclaims by alleging conduct by Plaintiffs that may be the

20   subject of this litigation, but that was not necessarily engaged in for the purposes of pursing the

21   litigation itself. Specifically, Defendants allege that Plaintiffs used negative public statements to

22   turn BGA's customers and fans against it, and copied BGA's sound recordings for Plaintiffs' own

23   use with the intent of driving BGA out of business. (ASAC ¶ 106.)

24          The Court also finds that Defendants are not required to plead a specific economic

25   relationship between itself and a third party. In Sebastian Int'l, Inc. v. Russolillo, the court found

---

[11] (See Order at 8 (finding that a claim for tortious interference based on the filing of a lawsuit is not cognizable unless the litigation concludes in the plaintiff's favor).)

10

the plaintiff's tortious interference claim was sufficiently alleged without naming specific customers. 128 F. Supp. 2d 630 (C.D. Cal. 2001). In Sebastian, the plaintiff alleged that the defendants sold the plaintiff's "salon-only" products in drug stores, thereby disrupting the prospective economic advantage the plaintiff had with its customers that it would have achieved had sales of the products been limited to salons. The Sebastian court found it sufficient that the plaintiff alleged that the defendants' conduct would harm the image of plaintiff's products and would cause some customers to stop purchasing plaintiff's products. Id. Accordingly, the Court finds that specifically naming third parties with whom there was a prospective economic relationship is not an absolute legal requirement at the pleading stage.

Accordingly, the Court DENIES Plaintiffs' Motion to Dismiss Defendants' Fourth Counterclaim for tortious interference with prospective economic advantage.

**4.     Defendants' Seventh Counterclaim - Intentional Interference With Contract**

Plaintiffs contend that Defendants' Seventh Counterclaim for intentional interference with contract should be dismissed on the ground that Defendants have not alleged that Warner, Rhino, or GDP had knowledge of any agreement between BGA and Sony BMG.[12] (Plaintiffs' Motion at 15.)

In California, "[t]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Pac. Gas & Elec., 50 Cal. 3d at 1126. Interference with contractual relations is an intentional tort that does not require a defendant to have actual knowledge of the existence of the contract with which it interferes; it is enough that a defendant know of facts from which it can infer the existence of a contract. See National Right to

---

[12] Plaintiffs also contend that the Seventh Counterclaim should be dismissed on the basis of (1) litigation privilege, (2) that GDP is a "sham defendant" and Warner and Rhino are non-opposing parties, and (3) there is no supplemental jurisdiction. The Court has already discussed each of these contentions in the context of other Counterclaims, and does not consider them further.

11

Life Political Action Committee v. Friends of Bryan, 741 F. Supp. 807, 813 (D. Nevada 1990) (citing Restatement (Second) of Torts §766 comment i (2008)).

Defendants allege, in relevant parts:

In January 2006, BGA entered into a Confidentiality Agreement with Sony BMG and its affiliates, by which Sony BMG was prohibited from disclosing the existence or contents of negotiations between BGA and Sony BMG. (ASAC ¶ 141.) Warner learned of these negotiations and induced Sony BMG to disclose BGA's confidential information in breach of the Confidentiality Agreement. (Id. ¶ 143.) Warner and Rhino, acting in its role as "Grateful Dead," intentionally contacted Sony BMG about BGA's assets with the knowledge that such contact and/or any ensuing discussions were certain or substantially certain to cause Sony BMG to disclose Confidential Information, in breach of its contract with BGA. (Id. ¶¶ 142-44.) Warner and Rhino's contact and conversations with Sony BMG caused Sony BMG to breach its contract with BGA, resulting in damage to BGA and its business prospects. (Id. ¶¶ 145-48.)

Defendants have alleged all of the required elements for a claim of intentional interference with contract. In particular, Defendants allege (1) a valid contract, the Confidentiality Agreement; (2) that Plaintiffs intentionally contacted Sony BMG in order to induce a breach of that contract; (3) that the Confidentiality Agreement was breached; and (4) resulting damage. Plaintiffs suggest that Defendants' pleading still fails, however, because Defendants do not adequately allege the requisite fifth element, knowledge of the contractual relationship. Despite this contention, the law does not require that a defendant have actual knowledge of the contract allegedly breached.[13] In this case, Defendants do allege that Plaintiffs learned of the negotiations between Sony BMG and BGA, and that Plaintiffs thereafter sought to obtain confidential information from Sony BMG. Although Defendants do not specifically allege that Plaintiffs knew of the Confidentiality Agreement, where two entities enter into negotiations, it can be reasonably inferred that the content of those negotiations are protected by a confidentiality agreement. The Court finds that Defendants Counterclaim for intentional interference with contract adequately alleges all five required elements.

---

[13] Plaintiffs rely on one case, Dryden v. Tri-Valley Growers, 65 Cal.App. 3d 990, 996 (1977), for the proposition that a claim for intentional interference with contract is fatally defective where it fails to allege that defendant had knowledge of the contract at the time defendant engaged in conduct inducing the breach. Dryden, however, is not factually on point with the factual allegations in this case. In Dryden, the plaintiffs specifically alleged that the defendant learned of the contract one day after the defendant allegedly induced the plaintiff to breach. In this case, Defendants allege that Warner knew of negotiations between Sony and BGA and subsequently intentionally induced Sony to breach its contract.

12

Accordingly, the Court DENIES Plaintiffs' Motion to Dismiss Defendants' Seventh Counterclaim for intentional interference with contract.

### 5. Defendants' Eighth Counterclaim - Unfair Competition

Plaintiffs contend that Defendants' Eighth Counterclaim for unfair competition under California Civil Code §§ 17200, *et seq.*, should be dismissed on the ground that it fails to state a claim upon which relief can be granted.[14] (Plaintiffs' Motion at 6-9.)

"Unfair competition" under Cal. Bus. & Prof. Code § 17200 means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." The scope of § 17200 "permits violations of other laws to be treated as unfair competition that is independently actionable." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002). It "borrows violations from other laws by making them independently actionable as unfair competitive practices." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003). "Virtually any law–federal, state or local–can serve as a predicate for an action under [§ 17200]." Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 717-18 (2001).

As discussed throughout this Order, Defendants allege that Plaintiffs violated numerous state and federal laws through a campaign that was based on undermining Defendants' ownership interests in various copyrighted works.[15] Thus, any number of Defendants' Counterclaims can serve as the predicate violation for Defendants' UCL claim.

Accordingly, the Court DENIES Plaintiffs' Motion to Dismiss Defendants' Eighth Counterclaim for unfair competition.

---

[14] Plaintiffs also contend that the Eighth Counterclaim should be dismissed on the basis of the litigation privilege and that this Counterclaim is based solely on the filing of this action. (Plaintiffs' Motion at 7, 16.) The Court has already discussed each of these contentions in the context of other Counterclaims, and does not consider them further here.

[15] The Court does not repeat the totality of those allegations in this subsections, but incorporates allegations discussed throughout the order as the basis for its conclusion on Defendants' Counterclaim for unfair competition.

13

### 6.     Defendants' Tenth Counterclaim - Copyright Infringement

Plaintiffs Sony BMG and BMG Music move to dismiss Defendants' Tenth Counterclaim for copyright infringement, on the ground that Defendants have not stated sufficient facts in support of this claim. (Plaintiffs' Motion at 13.)

Under 17 U.S.C. § 106, the owner of a copyrighted work has the exclusive right to reproduce, distribute, publicly perform, publicly display, and make derivative works of the copyrighted work. To establish a successful copyright infringement claim, a plaintiff must show that he owns the copyright and that defendants copied protected elements of that work. See, e.g., Narell v. Freeman, 872 F.2d 907, 910 (9th Cir. 1989).

Defendants allege, in relevant parts:

> Defendants BGA and Norton LLC are the owners of copyrights to certain sound recordings that have been registered with the Copyright Office, which are identified in an attached Exhibit. (ASAC ¶ 166.) The recordings are recordings of concerts that BGA and/or its predecessors recorded, directed, and mixed, and are derivative works to which Defendants contributed original copyrighted content. (Id. ¶ 167.) Plaintiffs willfully, and with full knowledge of copyrights and claims of authorship and ownership by BGA and Norton LLC, and without license or authorization, downloaded copies of the sound recordings for their own use and gain. (Id. ¶¶ 168-72.)

Defendants have alleged that Plaintiffs Sony BMG and BMG Music copied protected elements of specific copyrighted works owned by Defendants. See Narell, 872 F.2d at 910. This is all that the law requires a party to successfully allege in order to survive a motion to dismiss on a copyright infringement claim. To the extent Defendants may have a fair use defense in that the alleged copying was done for purposes of this litigation, such a defense can only be resolved after further development of the factual record during discovery. See Religious Technology Center v. Wollersheim, 971 F.2d 364, 367 (9th Cir. 1992). Thus, the Court declines to consider the validity of Plaintiffs' fair use defense at this time.

Accordingly, the Court DENIES Plaintiffs' Motion to Dismiss Defendants' Tenth Counterclaim for copyright infringement.

//

### 7. Defendants' Eleventh Counterclaim - Business Defamation and Business Disparagement

Plaintiffs contend that Defendants' Eleventh Counterclaim for business defamation and business disparagement should be dismissed because (1) the alleged defamatory statements are non-actionable opinion and hyperbole and (2) Defendants failed to identify which Plaintiff was associated with which statements. (Plaintiffs' Motion at 10; Plaintiffs' Reply at 5.)

In California, a disparaging statement about a competitor's product that causes the competitor to suffer pecuniary damages is actionable as trade libel. See Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 972-73 (9th Cir. 1994). Trade libel and product disparagement are "injurious falsehoods that interfere with business. Unlike classic defamation, they are not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business." Aetna Cas. & Sur. Co. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1988).

In this case, Defendants' Counterclaim alleges in relevant parts:

> Plaintiffs have repeatedly made statements to the press in which they falsely claim that, among other things: (1) Bill Graham's recordings of the many concerts in the Bill Graham Archives were unauthorized, (2) BGA's multimillion dollar transactions in which they lawfully acquired Bill Graham's archives were not legitimate, (3) BGA and Sagan are "stealing" from Plaintiffs, and (4) BGA is exploiting the products in a manner that devalues the recordings and the history of the music. (ASAC ¶ 176.) These statements were made with knowledge of falsity or reckless disregard for the truth in order to induce customers away from Defendants and toward Plaintiffs. (Id. ¶ 177.) As a result of Plaintiffs statements, Defendant BGA has been damaged through a loss of sales, profits, and goodwill. (Id. ¶ 178.)

This Counterclaim does not allege facts sufficient to state a claim for business disparagement. All of the allegations contained in ¶ 176 of the Counterclaim are vague assertions, which do not clearly identify any particular defamatory remark, other than the "stealing" remark made by Robert Weir, who is no longer a party to this action. The only other identifiable candidate for a defamatory statement in the Counterclaim is the allegation that Plaintiffs "are credited as stating: "'Taken to its logical conclusion [Sagan] purports to have the rights to list the trademarks and rights of publicity of this original material and to copy it to anything he sees fit . . . wrapping paper, afghans, wallpaper, mugs . . . .'" (ASAC ¶ 71.) This statement, however, is nothing more than what Sagan does, in fact, claim - that he holds intellectual property rights in the material he

15

1  distributes through his business. To the extent this statement speaks of "afghans" or "wallpaper,"
2  the Court finds the alleged statement to be no more than the type of "rhetorical hyperbole" found
3  permissible by the Ninth Circuit in <u>Mattel, Inc. v. MCA Records, Inc.</u>, 296 F.3d 894, 901 (9th Cir.
4  2002). The remaining allegations identify no specific statements or their origin, which the Court
5  finds significant given the many parties to this action.
6      Accordingly, the Court GRANTS Plaintiffs' Motion to Dismiss Defendants' Eleventh
7  Counterclaim with respect to Sony BMG, BMG Music, Arista, Warner, and Rhino, giving
8  Defendants leave to amend their Counterclaim consistent with the terms of this Order.

**B.   Defendants' Motion to Dismiss**

Defendants move to dismiss Plaintiffs' Eleventh Cause of Action for intentional interference with contract and Plaintiffs' Twelfth Cause of Action for fraud on the Copyright Office. (Defendants' Motion at 5-9.)

### 1.   Plaintiffs' Eleventh Cause of Action - Intentional Interference with Contract

Defendants move to dismiss Plaintiffs' Eleventh Claim for intentional interference with contract on the grounds that Plaintiffs fail to allege (1) a specific artist contacted by Defendants in attempt to induce a breach; (2) a specific contract that was disrupted; and (3) any resulting harm. (Defendants' Motion at 4-5.)

In Section A.4, *supra*, the Court articulated the standard for intentional interference with contract. With respect to their interference with contractual relations claim, Plaintiffs allege:

> Sony BMG is a party to numerous valid recording contracts made with at least 77 musical performers or groups and that pursuant to those contracts Sony BMG Artists transferred and/or granted an exclusive license to all rights in the Recordings to Sony BMG Music Entertainment, BMG Music, or Arista Records and agreed not to permit anyone else to create, assign, manufacture or exploit the Recordings. (SAC ¶ 120.) Defendants are aware and at all relevant times have been aware that the Sony BMG Artists are parties to valid Recording Contracts with Sony BMG. (<u>Id.</u> ¶ 121.) Defendants interfered with the Recording Contracts by contacting one or more of the Sony BMG Artists in an attempt to persuade them to breach their obligations under the Recording Contracts, and one or more of the Sony BMG Artists has executed a written assignment, license, and/or release of rights in breach of the Recording Contract. (<u>Id.</u>) As a direct and proximate result of Defendants' conduct, Plaintiffs Sony BMG Music Entertainment, BMG Music, and Arista Records have been harmed and have suffered damages. (<u>Id.</u> at 125.)

1 Plaintiffs sufficiently allege each of the required elements for intentional interference with
2 contractual relations. Plaintiffs allege that a group of 77 artists are known to have exclusive
3 agreements with Sony BMG. It is undisputed that Defendants' website, Wolfgangsvault.com,
4 features at least some recordings by artists with whom Sony alleges to have a valid exclusive
5 contract. Defendants are therefore sufficiently on notice of which contractual relationships are
6 alleged to have been interfered with. Plaintiffs further allege that Defendants intentionally interfered
7 with these contracts, resulting in actual breaches, which resulted in damages to Plaintiffs. Plaintiffs
8 have therefore alleged each of the five elements required to state a claim for intentional interference
9 with contract. See Pac. Gas & Elec., 50 Cal. 3d at 1126.

10 Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiff's Eleventh cause
11 of action for intentional interference with contractual relations.

### 2. Plaintiffs' Twelfth Cause of Action - Fraud on the Copyright Office

13 Defendants contend that Plaintiffs' Twelfth Cause of Action for fraud on the Copyright
14 Office should be dismissed on the grounds that (1) fraud on the Copyright Office is not a legally
15 cognizable affirmative cause of action and (2) Plaintiffs fail to properly allege the elements of fraud
16 on the Copyright Office.[16] (Defendants' Motion at 5-9.)

17 A copyright registration can be invalid, and thus incapable of supporting an infringement
18 action, where there is "knowing failure to advise the Copyright Office of facts which might have
19 occasioned a rejection of the application." Whimsicality, Inc. v. Rubie's Cosume Co., 891 F.2d 453,
20 456 (2d Cir. 1989). In the Ninth Circuit, such "fraud on the Copyright Office can invalidate [a]
21 copyright." Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 994 (N.D. Cal. 2006) (citing Urantia
22 Found. v. Maaherra, 114 F.3d 955, 963 (9th Cir. 1997)). Although there is little case law suggesting

---

[16] Defendants also contend that Plaintiffs do not have standing to bring this claim because § 506 of the Copyright Act does not contain a private right of action. (Defendants' Motion at 5.) The Court is satisfied, however, that Plaintiffs are merely seeking a declaration of invalidity as to the copyrights held by Defendants, which are in dispute in this action. This is not in any way a criminal action for making false representations to the Copyright Office under § 506(e) of the Copyright Act. There is nothing novel about a judicial declaration of copyrights invalidity. See, e.g., Whimsicality, Inc. v. Rubie's Cosume Co., 891 F.2d 453, 456 (2d Cir. 1989).

17

whether or not fraud on the Copyright Office is cognizable as an affirmative cause of action,[16] case law does support the general principle that a plaintiff may offensively seek to have a defendant's copyright invalidated.  See, e.g., L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 487-88 (2d Cir. 1976) (upholding, in favor of a plaintiff, the district court's cancellation of a copyright recorded with the United States Customs Service and enjoining the enforcement of that copyright).  The parties have cited no contrary case law that is directly on point.

In this case, Plaintiffs allege in relevant parts:

> Defendants have cause to be filed numerous copyright applications claiming authorship of sound recordings performed by Plaintiffs.  These applications contained numerous factual misstatements and inaccuracies, which were false and misleading when made.  (SAC ¶ 128.)  The misstatements related to whether the disputed recordings were "works made for hire," whether Defendants had remixed or re-edited the original sound recordings, and whether Defendants had the permission of the owners of the copyrights in the original sound recordings to create or register derivative words in these recordings.  (Id.)  These factual misstatements were made by Defendants willfully and deliberately, and with full awareness that the statements were false and inaccurate.  (Id. ¶ 129.)  The United States Copyright office relied on Defendants' false statements and misrepresentations when issuing numerous copyright registrations to Defendant BGA.  (SAC ¶ 130.)  Plaintiffs are the owners of the copyrights that were the subjects of Defendants' fraudulent applications, and have been damaged as a result of the copyright registrations that were issued to Defendants.  (Id. ¶ 131.)

Plaintiffs have alleged a "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application."  Whimsicality, 891 F.2d at 456.  Specifically, Plaintiffs have alleged facts that, if true, would call into question the validity of Defendants' copyrights on the grounds that the copyrighted works are not actually derivative works or were derivative works that were not made with the permission of the original copyright holders.  See 17 U.S.C. § 106(2) (the right to make derivative works is exclusive to the copyright holder).  Furthermore, Plaintiffs have alleged that Defendants made these false statements to the Copyright Office willfully and deliberately.  This is all that is required to adequately plead fraud on the

---

[16] Defendants' contention that no such affirmative cause of action exists is not directly supported by any case law cited by Defendants.  (See Defendants' Motion at 6-7; Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Eleventh and Twelfth Claims at 5-7, hereafter, "Defendants' Reply," Docket Item No. 201.)  Cases cited by Defendants merely demonstrate that fraud on the copyright office has largely been invoked from a defensive posture.  Defendants do not, however, point to any affirmative statement of the law to the effect that fraud on the Copyright Office cannot be invoked from an offensive posture.

Copyright Office, which the Court finds is distinct from traditional common law fraud, and therefore not subject to the elements required for the successful pleading of traditional fraud.  See id.

With respect to Defendants' contention that fraud on the Copyright Office is not a legally cognizable affirmative cause of action, the Court finds no authority on point that suggests the legal impropriety of such an offensive claim.  Rather, the essence of this dispute relates to the ownership in numerous copyrighted works, to which both sides presently lay claim.  Plaintiffs clearly state that their goal is to seek a declaration that Defendants' copyrights are invalid. (Plaintiffs' Opposition at 5.)  Since the adjudication of the rights of both sides in the disputed sound recordings is a necessary concomitant to bringing this litigation to a close, the Court finds Plaintiffs' attempt to reach this endpoint via a fraud theory to be appropriate in light of both the governing law and the facts presently alleged.

Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' Twelfth Cause of Action for fraud on the Copyright Office.

### V.  CONCLUSION

The Court DENIES Defendants' Motion to Dismiss Plaintiffs' Eleventh and Twelfth Causes of Action.  The Court DENIES Plaintiffs' Motion to Dismiss Defendants' Second, Third, Fourth, Seventh, Eighth, Ninth, and Tenth Counterclaims.  The Court GRANTS Plaintiffs' Motion to Dismiss Defendants' Eleventh Counterclaim, giving Defendants leave to amend.  Defendants shall file a Second Amended Counterclaim, if they so choose, within **fifteen (15) days** from the date of this order.

The parties shall appear for a Preliminary Pretrial Conference presently set for **January 26, 2009 at 11 a.m.**  On or before **January 16, 2009**, the parties shall file a Joint Preliminary Pretrial Statement.  The Statement shall include, among other things, an update of the parties' settlement efforts and the parties' readiness for trial.

Dated: December 18, 2008

*James Ware*
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Andrew P. Bridges abridges@winston.com
Erin Rose Ranahan eranahan@winston.com
Jeffrey Harlan Reeves jreeves@gibsondunn.com
Jennifer A. Golinveaux jgolinveaux@winston.com
Joshua Aaron Jessen jjessen@gibsondunn.com
Laura Marie Sturges lsturges@gibsondunn.com
Michael S. Elkin melkin@winston.com
Rebecca Yuan Lawlor rcalkins@winston.com
Susan Ashlie Beringer aberinger@gibsondunn.com
Thomas P. Lane tlane@winston.com
Tracy Lorraine Marchant Tmarchant@gibsondunn.com

**Dated: December 18, 2008**              **Richard W. Wieking, Clerk**

**By:   /s/ JW Chambers**
         **Elizabeth Garcia**
         **Courtroom Deputy**